[S. F. No. 10884.   In Bank.—April 11, 1924.]

ANGLO–CALIFORNIA TRUST COMPANY (a Corporation), et al., Respondents, v. OAKLAND RAILWAYS (a Corporation), et al., Defendants; OAKLAND RAILWAYS (a Corporation), Appellant.

[1] PROMISSORY NOTES—COLLATERAL SECURITY—TRUST AGREEMENT—PAYMENT—FINDINGS—PLEADING.—In an action by a trustee of a note issue to recover the amount of the trust notes and to foreclose the collateral transferred in trust to secure their payment, the trial court finding that the entire principal sum of the trust notes is unpaid and the interest thereon is paid, and also finding that the interest on a collateral note given as security is paid, the contention that the interest received on the collateral note should be applied to the payment of the principal of the trust notes cannot be sustained where no such defense is pleaded, no evidence brought up on appeal in support of any such claim, and there is no finding which warrants the drawing of any inference in support of such contention. The finding that the entire principal sum of the trust notes is unpaid is not overthrown by, and is not inconsistent with, any other finding, it being directly responsive to the issue raised by the allegation of the complaint and the general denial of the answering defendants.

[2] FINDINGS—CONSTRUCTION—JUDGMENTS — INFERENCES.—Findings of the trial court are to receive such a construction as will uphold rather than defeat its judgment thereon, and whenever, from the facts found by it, other facts may be inferred which will support the judgment, such inference will be deemed to have been made by the trial court, and upon an appeal from the judgment the appellate court will not draw from those facts any inference of fact contrary to that which may have been drawn by the trial court for the purpose of rendering such judgment. The rule has especial application where the appeal is upon the judgment-roll alone.

[3] PROMISSORY NOTES — COLLATERAL NOTES — JUDGMENTS—APPEAL.—In such an action, the maker of the trust notes may not be heard to complain of the power of the trial court to give judgments against a codefendant on collateral notes and to order a sale of the judgments on such collateral notes, where such codefendant has not appealed, and the maker of the trust notes was not aggrieved by the action of court, but, on the contrary, was actually benefited thereby.

[4] ID.—COLLATERAL NOTES—JUDGMENT.—In such action, the rendition of the judgments on the collateral notes in question did not alter or

extinguish their character as collateral security. The judgments were as much collateral as the notes were before judgment was rendered, they being the same security in another and higher form.

[5] ID.—REMEDIES—TRUST AGREEMENT—ESTOPPEL.—In such action, if it be assumed that the trustee had pursued inconsistent remedies in obtaining judgments on the collateral notes with power to sell the same, the maker of the trust notes is estopped by its trust agreement from raising the question of inconsistent remedies, since by the terms of the trust agreement the trustee was empowered to sell the collateral pledged by the maker of the trust notes upon default or to proceed by appropriate action or proceedings at law or equity to protect and enforce its rights and the rights of the holders of the trust notes, it being also provided by said trust agreement that the remedies conferred upon, or reserved to the trustee, or the holders of the trust notes, were not intended to be exclusive of any other remedy, but should be cumulative and in addition to every other remedy given thereunder.

[6] ID.—EQUITY.—In such an action, it was proper for the trial court, sitting in equity and having taken cognizance of the entire matter, to proceed to a complete settlement of the affairs of the parties to the litigation, in so far as it could, while keeping within the scope of the transactions reflected in the proceedings before it.

[7] ID.—TRANSFER OF PROPERTY TO TRUSTEE—NATURE OF INTEREST.— Where in such action there was an actual assignment, transfer, mortgage, and pledge to and with the plaintiff as trustee "upon the trusts and subject to the terms and conditions" expressed in the trust agreement, the entire estate and interest of the maker of the trust notes in the property subject to the trust agreement was vested as an estate, and not as a lien, in the plaintiff as trustee, and the latter cannot be held to have had only a mere lien on the property.

[8] ID. — COLLATERAL NOTE—GUARANTY — RIGHT TO MAINTAIN ACTION AGAINST MAKER AND GUARANTOR.—In such action, a note, of which the maker of the trust notes was guarantor, having been conveyed to the plaintiff as collateral, and the legal title to the same having been transferred to plaintiff, under the very broad power conferred upon the plaintiff by the trust agreement, it was allowable for the latter to maintain the action against the maker of the collateral note and also against the maker of the trust notes as guarantor of the collateral note in the same action.

[9] ID.—GUARANTY — PLEADING — EQUITY—JURISDICTION.—In such action, in answer to the contention that the judgment on the guaranty of the collateral note is not supported by any allegation in the complaint, or anything that appears on the face of the record, it may be said that the proceeding adopted by the trial court was wholly consonant with the principle that where equity has acquired jurisdiction for one purpose, it will retain that jurisdiction to the

final adjustment of all differences between the parties arising from the cause of action presented. It is, indeed, its duty, when the parties to the controversy are before it, to adjust the rights of all and leave nothing open to further litigation.

[10] ID.—COLLATERAL NOTE — GUARANTY—CONSTRUCTION—LIABILITY.— Where the guaranty of a collateral note is regarded as an original, independent undertaking to pay the debt of the maker, in the event the latter did not pay it, the note and the guaranty must be construed to be but one instrument, constituting a single contract, upon which the liability of the guarantor, to the extent of its obligation, is commensurate with that of the maker of the note.

[11] ID. — JUDGMENT AGAINST GUARANTOR — EFFECT UPON PRIMARY LIABILITY.—In such action, where the guaranty by the maker of the trust notes, guaranteeing payment of the collateral note, may be properly considered as collateral in so far as it was necessary to give the trustee the full benefit of the lien upon the pledged property, the judgment rendered against the maker of the trust notes on its guaranty of said collateral note has not increased and cannot add to the burden of payment to which it has already been subjected by reason of the judgment against it on its primal obligation to pay the amount found due on its own trust notes; the judgment on this collateral undertaking being the collateral promise reduced to a judgment which has taken the place of the guaranty and stands as security merely for the payment of the principal debt evidenced by the trust notes; and when that obligation is satisfied, such collateral judgment will become extinguished and no action or rights can thereafter be maintained upon it.

[12] ID. — JUDGMENT — SALES. — In such an action, if it be urged that the trial court erred in decreeing that the judgment against the maker of the trust notes on the guaranty might be sold under the judgment entered on the trust agreement "as part of the properties held and pledged to secure the payment of the amounts found due" on the trust notes, the first answer to such contention is that its action is supported by the finding that the judgment on the guaranty is "subject to said trust agreement . . . and the lien and pledge thereby evidenced," and the next answer is that as long as the trustee remains owner of the judgment it cannot collect upon both the original debt and the collateral security.

[13] JUDGMENTS—SALES—CAVEAT EMPTOR.—A judgment is property which can be transferred and the rule of *caveat emptor* applies to the sale of a judgment.

[14] ID.—CHOSE IN ACTION.—A judgment is not a negotiable instrument, but is a mere chose in action vesting an equitable right in the assignee to the proceeds of it, with a right to the usual and legal means of collecting the amount due on it.

[15] ID. — CHARACTER OF SALE — EFFECT UPON RIGHTS OF PARTIES.—
There is no difference, so far as affects the equity of the interest
conveyed, between a sale made voluntarily by a party himself
and a sale made for him by a sheriff or commissioner who, in
making it, acts as his agent; a sale by a sheriff or commissioner
is in effect only an assignment.

[16] ID. — SALE OF JUDGMENT — TITLE — NOTICE. — If the assignor or
holder of the judgment has no title, the assignee or purchaser at
the sale of the judgment will take none, whether he had notice
or not.

APPEAL from a judgment of the Superior Court of
the City and County of San Francisco. James M. Troutt,
Judge. Affirmed.

The facts are stated in the opinion of the court.

Werner Olschewski for Appellant.

McKinstry, Haber & Firebaugh, Garret W. McEnerney,
and Cushing & Cushing for Respondents.

WASTE, J.—This is an appeal, on the judgment-roll
alone, by the Oakland Railways, one of many defendants,
in an action brought by the plaintiff, as trustee of a note
issue, to recover the amount of the notes and to foreclose
the collateral transferred in trust to secure their payment.
The findings are comprehensive, and the pertinent facts
clearly appear therefrom.

The defendant Oakland Railways was the controlling
stockholder of the San Francisco-Oakland Terminal Rail-
ways, which latter corporation was formed by the consolida-
tion of four previously existing railroad corporations. On
or about the twelfth day of August, 1912, Oakland Rail-
ways executed and delivered to the plaintiff, Anglo-Cali-
fornia Trust Company of San Francisco, as the trustee
thereunder, a certain trust agreement to secure the payment
of an issue of six per cent collateral trust notes in an
aggregate principal amount of $2,500,000. At the same
time, as a part of the transaction, and pursuant to and
in accordance with the terms of the trust agreement, the
Oakland Railways made and executed one hundred notes,
by the terms of each of which notes the Oakland Railways,

for value received, promised to pay the bearer thereof, at the office of the Anglo-California Trust Company in the city of San Francisco, on the twelfth day of June, 1913, the sum of $25,000 in gold coin of the United States of America, with interest thereon from the date of such note until paid at the rate of six per cent per annum. These notes were thereafter sold by the Oakland Railways to investors, and at the time of the commencement of this action they were held by various parties. Contemporaneously with the execution of the trust agreement, and in order to secure the payment of the principal and interest of all of the notes at any time issued and outstanding under its terms, the Oakland Railways "assigned, transferred, mortgaged and pledged" to and with the plaintiff Anglo-California Trust Company the following property:

(1) 1,843 one thousand dollar, five per cent, twenty-eight year gold bonds of the Oakland Traction Company, having an aggregate face value of $1,843,000.

(2) 1,413 one thousand dollar, five per cent, thirty-year gold bonds of the San Francisco, Oakland and San Jose Consolidated Railway, having an aggregate face value of $1,413,000.

(3) A promissory note of the San Francisco-Oakland Terminal Railways for the principal sum of $2,500,000, with interest at the rate of six per cent per annum, dated August 12, 1912, originally payable to Oakland Railways or order, and by it indorsed so as to be payable to bearer. This note was secured by the entire outstanding capital stock of Oakland Terminal Company, less five "qualifying directors' shares," which was pledged to plaintiff to secure its payment. Prior to, or contemporaneously with, its execution and delivery to plaintiff, and as part of the same transaction, the defendant Oakland Railways guaranteed payment of the principal and interest of the note, and waived presentment, demand, protest and notice.

(4) The capital stock of the San Francisco-Oakland Terminal Railways, class A and class B, preferred, of the par value of $4,811,200, and common stock of the par value of $13,710,000.

The defendant Oakland Railways also transferred to, deposited, and pledged with the plaintiff, as part of the property to be deposited and pledged under the trust agree-

ment, a promissory note, dated March 15, 1912, for the principal sum of $128,184, executed by Oakland Traction Company, payable on demand to The United Properties Company of California or order, and by that corporation duly and legally indorsed so as to be payable to bearer.

A collateral trust agreement was made and executed between the defendants Oakland Terminal Company, Oakland Railways, and San Francisco-Oakland Terminal Railways and the plaintiff Anglo-California Trust Company, as trustee thereunder, pursuant to which thirty-five notes of Oakland Terminal Company of the aggregate principal sum of $1,100,000, together with certain interest coupons, were executed and delivered by Oakland Terminal Company to Anglo-California Trust Company as trustee. Concerning this part of the transaction, the trial court found that since the commencement of the action these thirty-five notes have been paid and discharged, and the lien created by the collateral trust agreement has been extinguished.

It is provided in the trust agreement of August 12, 1912, securing the one hundred $25,000 notes, that if any one or more of certain events called "events of default" should happen, "the trustee shall have full power and authority to sell at its option the whole or any part of the collateral pledged hereunder. . . . The trustee in its discretion, however, instead of or in addition to exercising the power of sale herein conferred upon it, may proceed by appropriate action or proceedings at law or in equity as the trustee may be advised by counsel, to protect and enforce its rights and the rights of the holders hereby secured and then outstanding. Whenever the notes shall become due and payable by declaration or otherwise, upon the demand or successive demands of the trustee, Oakland Railways expressly covenants and agrees that it will pay to the trustee for the benefit of the holders of the notes then outstanding the whole amount due and payable at the time of any such demand on all of such notes for principal and interest, with interest upon the overdue principal and installments of interest at the rate of six per cent per annum; and in case Oakland Railways shall fail to pay the same forthwith upon such demand, the trustee in its own name and as trustee of an express trust for the holders of the notes shall be

entitled to recover judgment against Oakland Railways for the whole amount due and unpaid.

"VI.   Upon the happening of any of the events of default previously mentioned the trustee may take such action by legal proceedings or otherwise for the collection or enforcement of such collateral as to it may seem wise or proper."

No part of the principal sum of the one hundred promissory notes issued by defendant Oakland Railways was paid. Neither was any payment made on the principal of the promissory note executed by San Francisco-Oakland Terminal Railways to the Oakland Railways. In due time plaintiff, as trustee, gave notice of the nonpayment of the notes, and made written demand upon the defendant Oakland Railways for the benefit of the holders of all of the notes then outstanding that it pay the aggregate principal sum of the notes, together with accrued interest. Payment not being made, the holders of a majority of the face amount of the notes requested the Anglo-California Trust Company, as trustee, to declare the principal of the notes to be immediately due and payable, and to make demand for the payment thereof, and to institute this action, all of which acts were done by the plaintiff in the manner and at the times provided by the trust agreement, and subsequent to the making of such requests.

The only defendants to appear in the action were Oakland Railways and The United Properties Company of California. They appeared by an unverified general denial. Defaults of all other defendants served were entered, the action was dismissed as to others, and the cause proceeded to trial. Upon the evidence taken the court found the foregoing facts. It also found that plaintiff fully complied with and performed all of the terms, conditions and provisions of the trust agreement of August 12, 1912, on its part to be complied with or performed, prior to or as a condition for the commencement or maintenance of an action or actions to recover the amounts due and unpaid on the notes and to enforce the trust declared in the trust agreement, and to foreclose the pledge evidenced thereby. It found that the interest on the promissory note dated August 12, 1912, executed by San Francisco-Oakland Terminal Railways, was paid from time to time to and including the

twelfth day of June, 1923, which was the date of its judgment, leaving unpaid on that date only the principal sum of $2,500,000. It also found that no interest upon the one hundred notes of $25,000 remained unpaid. Judgment was directed to be entered against the Oakland Railways, maker of the one hundred notes, for the aggregate full amount of the principal, $2,500,000, together with interest at the rate of seven per cent per annum from the date of the judgment, and that plaintiff have execution against Oakland Railways for the amount of the judgment. The amount of the judgment, together with plaintiff's costs of suit, was declared a first lien upon all of the personal property pledged with Anglo-California Trust Company by Oakland Railways, pursuant to the terms of the trust agreement of August 12, 1912, and heretofore described, and a sale of all of such collateral was ordered.

It was also ordered that plaintiff have judgment against the San Francisco-Oakland Terminal Railways for the principal sum of $2,500,000, with interest at legal rate from judgment, upon the promissory note executed by it to Oakland Railways and by the latter defendant pledged to plaintiff. This judgment was made a first lien upon the 64,995 shares of stock of the Oakland Terminal Company pledged to secure the note, which were ordered sold to satisfy the amount so found due. A further judgment was ordered in favor of the plaintiff and against defendant Oakland Railways for the sum of $2,500,000, upon its guaranty of the last-mentioned note of the San Francisco-Oakland Terminal Railways, and execution was ordered thereon. Plaintiff was also awarded judgment for $128,814 against San Francisco-Oakland Terminal Railways, due on the note made by Oakland Traction Company, which last corporation, the court found, became a constituent element in the consolidated San Francisco-Oakland Terminal Railways after it made the note.

Concerning the three last-mentioned items in the judgment, it was, in the conclusions of law, provided: "That any judgment obtained in this or any other action by the plaintiff, Anglo-California Trust Company, a corporation, against the San Francisco-Oakland Terminal Railways on account of its said note for two million five hundred thousand dollars ($2,500,000) aforesaid, or the said note for

one hundred twenty-eight thousand eight hundred and fourteen dollars ($128,814) above described, or against the defendant Oakland Railways on account of its guarantee of the said note for two million five hundred thousand dollars ($2,500,000) are subject to said trust agreement dated August 12, 1912, and the lien and pledge thereby evidenced and may be sold under the judgment to be entered herein, as therein provided." The judgment in this respect, as in all others, minutely follows the conclusions of law, and permits that these three judgments be sold "as a part of the properties held and pledged to secure the payment of the" $2,500,000 found as the principal due from Oakland Railways upon the one hundred notes, and the interest on such sum from judgment.

Two appeals have been taken from the judgment in this case. The first was dismissed on motion on the ground that the attorney who signed the notice of appeal and prepared the transcript was not the attorney of record, and that there had been no substitution of attorneys. (*Anglo-California Trust Co.* v. *Oakland Railways,* 191 Cal. 387 [216 Pac. 578].)

Several contentions are advanced by appellant in support of the present appeal. The respondent has suggested that certain points raised by the appellant are now moot questions by reason of the fact that all of the collateral by which the one hundred $25,000 notes of the Oakland Railways were secured has been sold by the commissioners appointed by the judgment in this case, and in a judgment rendered the same date in another action between the same parties as those to this action, and in which judgment was rendered in favor of this plaintiff and against San Francisco-Oakland Terminal Railways for the sum of $2,500,000, with interest, based upon its note for that amount executed to Oakland Railways, and by that corporation in turn pledged to plaintiff as security for the notes which are the basis of the present action. Respondent has not pointed out the particular matters which it claims have become moot, and we are not inclined to pursue that subject any further, for the appeal may be readily disposed of on the points raised by appellant.

[1] One of the contentions of the appellant is, in effect, that the findings of the trial court do not support the judg-

ment. It contends that upon the facts found the court below could not award a judgment for $2,500,000 in favor of plaintiff and against Oakland Railways upon the one hundred $25,000 notes because, under the findings, Oakland Railways is entitled to a credit upon those notes in the sum of $1,500,000, the amount of the interest paid by San Francisco-Oakland Terminal Railways upon its $2,500,000 note to the Oakland Railways, from the date of the default of the latter corporation upon its one hundred $25,000 notes, June 12, 1913, to June 12, 1923, at the rate of $150,000 per year for ten years, the court having found that all of the interest on the one hundred $25,000 notes had been paid from the date of said notes to the date of the entry of judgment. This contention amounts to the assertion that the plaintiff had in its hands, applicable to the payment of the one hundred $25,000 notes, $1,500,000 in cash, which it ought to have applied against those notes, leaving unpaid but $1,000,000, for which amount the judgment should have been entered. No such defense was pleaded. No evidence has been brought here in support of any such claim, and there is no finding which warrants the drawing of any inference to support appellant's contention. The finding that the entire principal sum of the one hundred promissory notes is unpaid is not overthrown by, and is not inconsistent with, any other finding. It is directly responsive to the issue raised by the allegation of the complaint and the general denial of the two answering defendants, and which appears to have been regarded by all the parties in court as sufficient to put them on proof as to the fact of the payment or nonpayment of the notes and the amount due thereon.

Appellant asserts that it is not attempting to overthrow the finding that the entire principal sum of the $2,500,000 of the Oakland Railways' notes is unpaid, but argues that inferences which must be drawn from the findings made do not permit such an assumption. No good purpose will be served by attempting here to follow the appellant in its contentions as to the inferences it argues should be drawn. [2] Findings of the trial court are to receive such a construction as will uphold rather than defeat its judgment thereon, and whenever, from the facts found by it, other facts may be inferred which will support the judgment,

such inference will be deemed to have been made by the trial court, and upon an appeal from the judgment this court will not draw from those facts any inference of fact contrary to that which may have been drawn by the trial court for the purpose of rendering such judgment. (*Breeze* v. *Brooks,* 97 Cal. 72, 77 [22 L. R. A. 256, 31 Pac. 742].) The rule has especial application where, as in this case, the appeal is upon the judgment-roll alone. (*Cutting Packing Co.* v. *Canty,* 141 Cal. 692, 695 [75 Pac. 564].)

Another contention of the appellant is that plaintiff cannot recover judgment against the San Francisco-Oakland Terminal Railways, maker of the $2,500,000 collateral note, and, at the same time, procure a sale of the collateral. Its theory is that the remedy for the enforcement of the collection of the pledged note is inconsistent with the remedy of sale thereof. The defense of "inconsistent remedies" was not pleaded by the appellant, and appears to be raised for the first time on this appeal. This contention is embodied in an attack upon that part of the judgment which authorizes the sale of the judgments obtained and entered in this action on the two promissory notes for $2,500,000 and $128,814. Appellant denies the power of the court to order a sale of the judgments on the collateral notes as part of the property pledged to secure its primary obligation. It says: "The notes could not be collected and then sold, nor sold and then collected by the trustee. The remedies being inconsistent, the trustee, when filing the action on the pledged notes and obtaining judgment thereon, was concluded from proceeding under the power of sale. It could not stop short with one remedy, that of collection, and make use of the other remedy, that of sale, and sell the judgment. It could only proceed and exhaust its choice of remedy."

[3] There appear to be several reasons why the appellant may not be heard to complain in this manner. In the first place, the defendant against whom this part of the judgment was rendered has not appealed. In the next place, appellant was not aggrieved by the action of the court, but, on the contrary, was actually benefited thereby. [4] The rendition of the judgment on the notes in question did not alter or extinguish their character as collateral security. The judgments were as much collateral as the notes were

before judgment was rendered. (*Lynch* v. *Burt,* 132 Fed. 417, 428 [67 C. C. A. 305].) They are the same security in another and higher form. (1 Freeman on Judgments, par. 229; Jones on Pledges and Collateral Security, 2d ed., par. 591.) Only the form, and not the substance, was changed, and that was done, we may assume, primarily to prevent the interposition of the bar of the statute of limitations. The action of the court in this regard benefited the appellant. If, for any reason, the value of the notes as collateral for the payment of its own obligations had become lost, its direct burden of payment would have become so much greater. As it was, their character as collateral was preserved by merger into the judgment. **[5]** Again, if we should assume that respondent had pursued inconsistent remedies in the particular complained of, appellant is estopped by its contract from raising the question. By the terms of the trust agreement of August 12, 1912, as already pointed out, it was provided that the plaintiff was empowered to sell the collateral pledged by the appellant upon the happening of any of the events of default, and might proceed by appropriate action or proceedings at law or equity to protect and enforce its rights and the rights of the holders of the notes of appellant. It was also provided that the remedies conferred upon, or reserved by the terms of the trust agreement to plaintiff as trustee, or the holders of the notes, were not intended to be exclusive of any other remedy, but should be cumulative and in addition to every other remedy given thereunder. It would be hard to conceive how broader powers could have been conferred upon plaintiff in the matter of taking whatever steps it might deem necessary or proper, on default of the appellant being established, even to the pursuit of inconsistent remedies. For these reasons we deem it unnecessary to pursue further the discussion as to whether or not the action of the court did involve a situation where inconsistent remedies were pursued. The trial court very properly regarded the judgments against the San Francisco-Oakland Terminal Railways as but a continuation, in different form, of the two collateral notes which were the foundation of the judgments. So regarded, it ordered them sold "as part of the properties held and pledged to secure the payment of the amounts found due" by the judgment against ap-

pellant on the one hundred notes for $25,000 each executed by it and secured by the trust agreement of August 12, 1912. Its action thus inured to the benefit and advantage of the appellant. **[6]** It was proper for the court, sitting in equity and having taken cognizance of the entire matter, to proceed to a complete settlement of the affairs of the parties to the litigation, in so far as it could, while keeping within the scope of the transactions reflected in the proceedings before it.

Appellant makes the further contention that under no conditions could the Anglo-California Trust Company, as a mere pledgee of the $2,500,000 note of the San Francisco-Oakland Terminal Railways, sue it, the Oakland Railways, payee of such note, upon its guaranty of payment of a collateral obligation, but was confined to its remedy against the maker. It relies upon *Sparks* v. *Caldwell*, 157 Cal. 401 [108 Pac. 276]. It was held in that case that the holder of a promissory note, executed by one who as payee of the note of a third person expressly guaranteed payment of such second note, and transferred it to his creditor as collateral security for the payment of the principal obligation, was confined to his remedy against the maker of the collateral note, and could not maintain an action against the pledgor upon the express guaranty. Respondent, on the other hand, contends that *Sparks* v. *Caldwell* was overruled by the later decision of this court in *Cooke* v. *Mesmer*, 164 Cal. 332 [128 Pac. 917]. In that case a recovery was had against guarantors, who were the payees, of certain notes executed and payable to the defendants, which had been deposited as security by the payees for money loaned to still other parties. The judgment was affirmed on appeal, and the court said (p. 340) : "It is thoroughly settled that an action on such a guaranty is one upon an independent contract of the guarantor, with which the principal debtor has nothing to do." Neither of these cases is in exact point with the case at bar. In *Sparks* v. *Caldwell*, the one question presented was whether or not a pledgee could sue a pledgor as guarantor of a collateral security in the nature of a negotiable instrument, and the court said he could not . for the reason that, "as between the pledgor and pledgee, the general property in a pledge remains in the pledgor" (citing Civ. Code, sec. 2888), and the transfer of the

pledged note did not transfer the title any further than to entitle the pledgee to collect the note from the maker. In *Cooke* v. *Mesmer* the guaranty sued on was an "independent contract" made to secure the payment of money loaned to third parties on the strength of such guaranty. We are not concerned, for the purpose of this case, in determining whether or not *Sparks* v. *Caldwell* has been overruled by the decision relied on by respondent, for there are features, both in relation to the law and the facts, which distinguish the instant case from both of the foregoing decisions. Section 2888 of the Civil Code, on the authority of which *Sparks* v. *Caldwell, supra,* was decided, provides that, "notwithstanding an agreement to the contrary, a lien, or a contract for a lien, transfers no title to the property subject to the lien." The court held in that case, therefore, that the title to the note was the all-significant matter and that, as the title remained in the pledgors, the pledgee was clothed only with the power, as their agent, to collect the amount due from the maker of the note, and to apply such sum to the payment of his debt (p. 405). **[7]** A different situation is presented here. The instant case is one in which there was an actual assignment, transfer, mortgage, and pledge to and with the respondent as trustee "upon the trusts and subject to the terms and conditions" expressed in the trust agreement of August 12, 1912. Section 2872 of the Civil Code declares: "A lien is a charge imposed in some mode other than by a transfer in trust upon specific property by which it is made security for the performance of an act." The entire estate and interest of the appellant in the property subject to the trust agreement was vested as an estate, and not as a lien, in the respondent as trustee (*Weber* v. *McCleverty,* 149 Cal. 316, 322 [86 Pac. 706]), and the trustee cannot be held to have had only a mere lien on the property. (*Hollywood Lumber Co.* v. *Love,* 155 Cal. 270, 273 [100 Pac. 698].)

**[8]** Consequently the note of the San Francisco-Oakland Terminal Railways having been conveyed to respondent as collateral, and the legal title to the paper having been transferred to respondent, we see no reason why, under the very broad power conferred upon it by the trust agreement, it should not be allowed to maintain the action against the maker, and also against this appellant as guarantor in

the same action. That would seem to be a very reasonable thing to do in this particular action, wherein, it is evident, the court endeavored to dispose of the whole subject matter of the controversy at one time—not piecemeal—a practice worthy of emulation. (*Cramer* v. *Tittle*, 79 Cal. 332, 335 [21 Pac. 750].) **[9]** In answer to the further contention that the judgment on the guaranty is not supported by any allegation in the complaint, or anything that appears on the face of the record, it may be said that the proceeding adopted by the court was wholly consonant with the principle that where equity has acquired jurisdiction for one purpose, it will retain that jurisdiction to the final adjustment of all differences between the parties arising from the cause of action presented. It is, indeed, its duty, when the parties to the controversy are before it, to adjust the rights of all and leave nothing open to further litigation. (*Swan* v. *Talbot*, 152 Cal. 142, 147 [17 L. R. A. (N. S.) 1066, 94 Pac. 238].)

Finally, appellant urges upon our consideration the contention that if the judgment obtained against it on the guaranty of the note of the San Francisco-Oakland Terminal Railways is permitted to stand, the result will be "that by reason of its principal obligation of $2,500,000, the Oakland Railways now has judgments against it of $5,000,000." This contention rests upon the assumption that appellant is primarily liable to respondent in the sum of $2,500,000 on the judgment against it for the amount of its note issue, and in an equal amount on its guaranty of the collateral note. For legal support of its contention, appellant looks to the proposition of law that in ordinary acceptance the term "collateral security" implies the transfer to the creditor of an interest in some property, or lien on property, or obligation which furnishes a security in addition to the responsibility of the debtor (11 Cor. Jur., p. 961), and that, therefore, an additional promise of a debtor to pay money cannot, from the very nature of the case, be treated as collateral security for his own debt. (*Dibert* v. *D'Arcy*, 248 Mo. 617, 643 [154 S. W. 1116]; *In re Waddell-Entz Co.*, 67 Conn. 324, 334, 335 [35 Atl. 257].) This rule seems to apply, however, only when the undertaking is considered solely in the light of a mere additional promise of the maker of the notes to pay money. The nature of the obligation

changes with attending circumstances. The two cases just
noted, and which are so strongly relied on by appellant, hold·
that should the debtor secure his second note, or contract,
by a mortgage upon property, the note and mortgage may
be treated as collateral to the principal indebtedness so
far as is necessary to give the creditor in the first note the
benefit, with respect to his indebtedness, of the lien upon the
mortgaged property normally created as security for the
collateral note. (*Dibert* v. *D'Arcy, supra; In re Waddell-
Entz Co., supra.*)

It has become necessary, therefore, to determine just what
was the nature of the transaction in the present case.
**[10]** Considered aside from the circumstances under which
it was made, appellant's guaranty was an original, inde-
pendent undertaking to pay the debt of the San Francisco-
Oakland Terminal Railways, in the event the maker of the
note did not pay it. (*Cooke* v. *Mesmer, supra.*) So re-
garded, the note and the guaranty must be construed to
be but one instrument, constituting a single contract, upon
which the liability of the guarantor, to the extent of its
obligation, was commensurate with that of the maker of
the note. (*Reios* v. *Mardis,* 18 Cal. App. 276, 281 [122
Pac. 1091]; *Bagley* v. *Cohen,* 121 Cal. 604, 606 [53 Pac.
1117].) But the findings of the trial court, the sufficiency
of which are not here attacked, indicate very clearly that
the guaranty was but one step of the entire transaction,
which resulted in the trustee being given power and au-
thority to pursue every means, or form of action, permissible
to secure payment of the notes issued by appellant. We
must not lose sight of the fact that by the terms of the
trust agreement appellant "as the controlling stockholder
of said San Francisco-Oakland Terminal Railways" made
certain agreements and representations concerning . the
amount of the stock of that corporation: That it would not
be increased until all of the notes issued by appellant
should be fully paid; that neither the maker of the collateral
note nor appellant should issue, sell, or otherwise dis-
pose of any bonds of the two corporations, or either of
them, unless the first proceeds resulting from the sale, or
other disposition, of such additional bonds be paid to the
trustees for the purpose of application to the payment of
the notes, and interest, secured by the trust agreement. Ap-

pellant further covenanted and agreed that it would "also do, execute and deliver, or cause or procure to be done, executed, acknowledged and delivered, all and every such further act, deed, transfer and assurances for the better assuring, conveying and confirming unto the trustee of all and singular the property pledged hereby, as the trustee shall reasonably require."

The trial court found that "contemporaneously with the execution and delivery of said trust agreement and as a part of the same transaction, said Oakland Railways delivered to and pledged with said Anglo-California Trust Company, pursuant to said trust agreement, . . . a promissory note dated August 12, 1912 [which is the date of the trust agreement], legally executed and delivered by San Francisco-Oakland Terminal Railways . . . for the principal sum of $2,500,000; . . . and which said note, prior to or contemporaneously with its execution and delivery, and as part of the same transaction, was guaranteed by defendant Oakland Railways." It also found that the judgment obtained by plaintiff against appellant on its guaranty is subject to the trust agreement and the lien and pledge thereby evidenced and might be sold under the judgment to be entered in this action. In the light of these findings, therefore, we may safely assume that the trustee required appellant to execute the guaranty for the "better assuring, conveying and confirming unto" it the note of the San Francisco-Oakland Terminal Railways and the collateral pledge of capital stock. To accept the view of appellant would be to hold that the parties to this particular transaction merely intended to accomplish an idle act. The facts found, and the judgment of the lower court, must be supported by every reasonable inference and intendment. [11] It is not at all unreasonable to conclude that the guaranty of appellant in this case was properly considered as collateral in so far as it was necessary to give the respondent, as trustee for the holders of the notes of the appellant, the full benefit of the lien upon the pledged property. Judgment on this collateral undertaking is the collateral promise reduced to a judgment which has taken the place of the guaranty and stands as security merely for the payment of the principal debt of appellant on its notes. When that obligation is satisfied, such collateral

judgment will become extinguished and no action or rights can thereafter be maintained upon it. (*Harding* v. *Hawkins,* 141 Ill. 572, 579 [33 Am. St. Rep. 347, 31 N. E. 307].) When the principal obligation or debt is satisfied, the only purpose for which the guaranty was executed or can be used has been accomplished. The satisfaction of the judgment against appellant upon the principal obligation will amount to a satisfaction of the judgment upon the collateral note. (*Lynch* v. *Burt, supra; Vanuxem* v. *Burr,* 151 Mass. 386 [21 Am. St. Rep. 458, 24 N. E. 773].) In the latter decision reference is made to *Corn Exchange* v. *Babcock,* 8 Abb. Pr. (N. S.) 256, where it is said (at page 259): "As a general if not a universal proposition, remedies upon the primary debt and upon the collateral security may be prosecuted at the same time, even to judgment and execution, though but one satisfaction can be obtained therefor. If an attempt be made to collect the judgment both upon the original and the collateral security, that can always be prevented or remedied by the order of the court." Therefore the judgment rendered against appellant on its guaranty of the note of the San Francisco-Oakland Terminal Railways has not increased and cannot add to the burden of payment to which it has already been subjected by reason of the judgment against it on its primal obligation to pay the amount found due on its own note issue. Appellant is not aggrieved thereby, and it becomes unimportant to consider further whether or not the trial court committed error in its rendition in this particular action.

[12] If it be urged that the trial court erred in decreeing that the judgment against appellant on the guaranty might be sold under the judgment entered on the trust agreement "as part of the properties held and pledged to secure the payment of the amounts found due" on the promissory notes executed by appellant, the first answer to such contention is that its action is supported by the finding that the judgment on the guaranty is "subject to said trust agreement dated August 12, 1912, and the lien and pledge thereby evidenced." The next answer is that as long as the trustee remains owner of the judgment it cannot collect upon both the original debt and the collateral security, as already pointed out. [13] In so far as a sale of the

judgment to a third party is concerned, while a judgment is property which can be transferred, the rule of *caveat emptor* applies to such transactions. (*Curtin* v. *Kowalsky,* 145 Cal. 431, 435 [78 Pac. 962].) **[14]** A judgment is not a negotiable instrument, but is a mere chose in action vesting an equitable right in the assignee to the proceeds of it, with a right to the usual and legal means of collecting the amount due on it. **[15]** There is no difference, so far as affects the equity of the interest conveyed, between a sale made voluntarily by a party himself and a sale made for him by a sheriff or commissioner who, in making it, acts as his agent. (*Fore* v. *Manlove,* 18 Cal. 437, 439.) A sale by a sheriff or commissioner is in effect only an assignment. (*Southard* v. *McBrown,* 63 Cal. 545, 547.) **[16]** If the assignor or holder of the judgment has no title, the assignee or purchaser at such sale will take none, whether he had notice or not. We think it must follow that any purchaser of the judgment entered against appellant on the guaranty in this case must take it subject to all the rights appellant has in the premises arising out of its relation to respondent by reason of the nature of the transaction. The exact nature of these rights does not need to be determined in this action.

The judgment appealed from is affirmed.

Lennon, J., Lawlor, J., Seawell, J., Richards, J., and Myers, C. J., concurred.

Rehearing denied.