[L. A. No. 20053.   In Bank.   June 25, 1948.]

JOSEPH C. BACON et al., Appellants, v. THOMAS P.
BACON et al., Respondents.

Siemon, Maas & Siemon, Alfred Siemon, Walter L. Maas, Jr., and Bennett Siemon for Appellants.

Matt Wahrhaftig, McKee, Tasheira & Wahrhaftig and Kendall, Howell & Deadrich for Respondents.

SCHAUER, J.—Plaintiffs, Joseph C. Bacon and Robert H. Bacon, seek declaratory relief, an accounting, and reconveyance of certain real property from defendants, who are plaintiffs' brother Thomas P. Bacon and an attorney, Jos. Wahrhaftig, employed by Thomas. The trial court rendered judgment in favor of defendants and plaintiffs have appealed. Upon the record presented, and for reasons hereinafter set forth, we have concluded that the judgment should be affirmed.

For brevity and clarity plaintiffs are hereinafter sometimes referred to as Joseph and Robert, and defendants as Thomas and the attorney. Because plaintiffs contend that the evidence fails in some respects to support the trial court's findings and its construction of the contractual relations and obligations of the parties, it is necessary to relate with some detail the evidence pertinent to the disputed matters.

Robert, Joseph, Thomas and ten others owned various undivided fractional interests in approximately 1,920 acres of prospective oil bearing land in Kern County, California. The percentages of ownership are stated as follows: Joseph, 13.96; Robert, 28.04; Thomas, 23.12; divided among ten persons or entities not parties to this suit, 34.88. Title to this land was clouded by various leases and other instruments. Prospective new lessees, R. E. Bering and T. E. Adams, wished to drill for oil on the land, but first required a title which would be insured by a responsible title company. For

the purpose of meeting that requirement most of the owners, including Joseph and Robert, conveyed their titles to Thomas, who was to bring a suit to partition and quiet title to the land and upon its successful culmination was to enter into an oil lease for the benefit of himself and of the other co-owners who had conveyed to him. Controversy over the nature and extent of his authority and of the performance by Thomas under the various powers of attorney, deeds, and so-called "trust agreements" under which he dealt with and held title to the interests of Joseph and Robert in the land, has resulted in the instant suit.

The record discloses the following undisputed events: Bering and Adams, who were associates in the acquiring and developing of oil properties, had spent time and money in unsuccessful efforts to clear title to the Kern County land and to secure an oil and gas lease on it. As a further step toward their goal they entered into a written contract with Thomas, under date of February 20, 1942, by which Thomas "warranted" that he was then the owner of not less than "an undivided 66.43% of all of" the Kern County land, and by which it was agreed, so far as here material, that:

"1.  Contemporaneously with the execution of this agreement Bering [and Adams] shall pay [Thomas] Bacon the sum of $5,000.00, and by execution of this agreement Bacon acknowledges receipt of said sum.

"2.  Contemporaneously with the execution of this agreement Bacon shall execute and deliver to Bering [and Adams] an oil and gas lease covering all of the right, title, and interest in the [Kern County] real property . . . which Bacon now has or may hereafter acquire, whether undivided, partitioned, or otherwise divided; such . . . lease to be upon the terms and conditions and substantially in the form hereto annexed. . . . If, in Bering's [and Adams'] opinion, other or further leases or agreements upon the same terms and conditions are later necessary to fully evidence . . . [their] interest as such lessee, Bacon agrees to execute and deliver the same.

"3.  Bacon shall forthwith, at Bacon's sole cost and expense, institute or take such legal proceedings as may be necessary to:

"(a)  Fully and finally partition and divide said real property so that the interest and ownership of Bacon therein shall not be undivided, and so that Bacon shall thenceforth own in fee not less than 66.43% of said real property; and

"(b) Fully and finally quiet title to all of said real property so partitioned or divided to Bacon in fee, or thereafter acquired by Bacon, so that Bacon's said title thereto in fee shall be insurable by a responsible title company . . .; provided, however, that if Bacon can secure the execution of the lease herein referred to by the owners of all of the undivided interests in the said property then the completion to judgment of proceedings to partition the same shall not be required. . . ."

Bering and Adams paid to Thomas the $5,000 mentioned in paragraph 1 of the above agreement, and Thomas executed the lease provided for in paragraph 2, employed attorneys, including defendant Wahrhaftig, and commenced preparation for the partition and quiet-title suit (hereinafter sometimes referred to as the suit).

Others of the co-owners in the Kern County land also conveyed their interests to Thomas in trust, and Thomas successfully prosecuted the suit to a court decree, entered December 23, 1943, by which title was quieted in Thomas to an undivided 91.66 per cent ownership in the land. Meanwhile, apparently in anticipation of such decree, Bering and Adams, on December 2, 1943, entered into a written agreement with Thomas for a second oil lease, which the parties agreed was to be a continuation of the lease of February 20, 1942; and which provided for a one-sixth royalty, to be paid, so far as concerned the 91.66 per cent of the land to which Thomas held title, to defendant Wahrhaftig for the credit of Thomas. Bering and Adams went into possession, and in May, 1944, commenced drilling for oil. At an expense of some $500,000 they drilled to a depth of approximately 11,000 feet and entered oil-bearing sand; but because of a "water problem" then encountered they had not at the date of trial herein (March 25, 1946) "raised or produced" oil and had made no payments of any kind to or for the account of Thomas except the $5,000 initially paid under the agreement of February 20, 1942.

On January 25, 1944 (approximately four months prior to commencement of the drilling), Thomas entered into a written "Operating Agreement" with defendant Wahrhaftig. The agreement recites, among other things, that Thomas "is the owner and/or has under his control under trust agreements wherein he is authorized to lease for development for oil and enter into agreements for the operation of

91.66% of'' the Kern County land, that Wahrhaftig had negotiated the oil and gas lease between Thomas and Adams, and that ''the operation of said property under said lease, and the collection of royalties which are payable . . . for distribution to the various fee and trust interests under said lease will require the continuing attention of'' Wahrhaftig. The agreement then provides as follows: ''[Thomas] hereby authorizes [Wahrhaftig] . . . to deduct from all royalties he receives, 5% of such gross amount, if paid in cash, or 5% of the gross amount resulting from the sale of oil and/or gas if paid in kind as full compensation for his services in supervising the operation under the terms of said lease for the collection and distribution of royalties in cash or in kind.

''[Wahrhaftig] . . . agrees to devote the necessary time and effort to the best of his ability, supervise the operation under the terms of said lease and to collect and distribute the royalties therefrom for the benefit of [Thomas] . . . and the trust interest held by [Thomas] . . . in cash or in kind for said compensation of 5%.

''This Agreement shall be binding upon the executors, . . . assigns or legal representatives of the [parties] . . . if capable of rendering a like service as the parties thereto.''

Pursuant to the operating agreement Wahrhaftig made various inspections, inquiries, and reports concerning the drilling operations, but as indicated above up to the time of trial had received no royalties of any nature for distribution to Thomas or to those for whom Thomas held title.

On April 25, 1945, plaintiffs Joseph and Robert filed this suit, asking that defendants, Thomas and the attorney, be required to account to plaintiffs for ''all royalties, bonuses, other considerations and things of value which they . . . may have received on and for the execution of'' the leases with Bering and Adams ''and/or for any other lease, conveyance, agreement or contract arising out of said property'' and to pay over to plaintiffs any amounts found owing; that the ''operating agreement'' between defendants ''be declared to be inoperative and without any legal effect as to the interests owned by the respective plaintiffs''; and that ''defendants be required to transfer and convey to the respective plaintiffs such interests in said property as may be found by the Court to belong to the respective plaintiffs.'' It was also asked that Thomas be required to reconvey to Joseph the latter's interest in certain real property in Los Angeles, San

Bernardino and Contra Costa Counties theretofore conveyed by Joseph to Thomas.

Defendants, in their answer, allege among other things that no payments whatever had been received on account of the Kern County land except the $5,000 paid by Bering and Adams under their agreement of February 20, 1942, with Thomas; that such $5,000, plus the additional sum of $184.89, had been expended by Thomas for "Court costs, counsel fees, payment for quitclaims and for travelling expenses of counsel in connection with" the partition suit "and in connection with the negotiations for the clearing of" title to the land; that Thomas had already reconveyed to Robert the latter's interest in the Kern County land, but that Robert owed to Thomas a proportionate (28.04%) share of the $184.89 mentioned hereinabove; that Thomas was willing to reconvey to Joseph upon payment by Joseph of a proportionate (13.96%) share of such $184.89 plus certain additional sums of money also owing by Joseph to Thomas; that under the "operating agreement" of January 25, 1944, defendant Wahrhaftig was entitled to receive 5 per cent of all royalties accruing under the lease with Bering and Adams, including 5 per cent of the royalties attributable to the interests of Joseph and Robert in the land. Judgment was rendered to the effect that the operating agreement was valid and that plaintiffs' interests in any oil royalties paid under the lease with Bering and Adams were subject thereto; that Thomas had fully accounted for all the money received by him for plaintiffs' benefit; that upon the payment by Joseph to Thomas of $1,000* (found to be owing under the terms of an agreement hereinafter more fully discussed) Joseph "is entitled to a reconveyance of his interest in the Kern County" land, but subject to the oil leases and to the operating agreement with Wahrhaftig; that Thomas had accounted for the other lands which Joseph had conveyed to him; that Robert pay to Thomas his proportionate share of the $184.89 expended by Thomas over and above the $5,000 paid by Bering and Adams.

As grounds requiring reversal of the judgment plaintiffs contend:

1. That Thomas was without "authority to impose upon the interests of Joseph and Robert [in the Kern County land]

---

*The judgment makes no mention of a charge to Joseph for his share of the $184.89, but this omission, being in favor of Joseph, is not complained of by him.

the obligation to pay defendant Wahrhaftig five per cent of the royalties which might become due and payable from the production of oil."

2. That Thomas could not properly charge to Joseph any of the expenses of the partition and quiet-title suit, but instead was required to credit Joseph with a proportionate share of the $5,000 paid to Thomas by Bering and Adams.

3. That certain items included by Thomas in his total expenditures of $5,184.89 in connection with the partition and quiet-title suit and sought by him to be charged proportionately against the interests of plaintiffs were improper, unnecessary and unreasonable.

4. That Thomas had not fully accounted for Joseph's interest in the lands in Los Angeles, San Bernardino and Contra Costa Counties which Joseph had conveyed to Thomas.

*1. The Operating Agreement with Defendant Wahrhaftig.*

In support of their first contention plaintiffs urge that, properly construed, the written agreements under which Thomas was authorized to enter into oil leases covering the interests of plaintiffs in the Kern County land did not authorize him to bind their royalties "by any contract with the defendant Wahrhaftig."

On November 28, 1938, Joseph executed a power of attorney appointing Thomas his attorney in fact with power to "do and perform all matters and things, transact all business, make . . . all contracts, . . . leases . . . and all other . . . instruments" which Joseph himself might do or make with respect to Joseph's interest in the Kern County land and in certain other parcels of real property situated respectively in Los Angeles, Contra Costa and San Bernardino Counties. On December 17, 1938, Joseph by quitclaim deed conveyed title to the same lands to Thomas.

Under the date of March 16, 1942, Thomas and Joseph entered into a written agreement in which it is recited that disputes and differences of opinion had arisen between them "concerning various matters" which they desired to settle and adjust. Thomas agreed that he was holding "in trust for the benefit of" Joseph the land theretofore quitclaimed by Joseph to Thomas and that "upon the termination of the present Partition and Quiet Title suit instituted by [Thomas] . . . as plaintiff in the Superior Court of Kern County" and involving the Kern County land Thomas "will,

at any time upon demand, convey back to [Joseph] . . . by good and sufficient deed free from any claim or claims of'' Thomas, all of Joseph's ''interest in the Kern County property . . . and also convey back to [Joseph] . . . all of his said interest in the real property situated in Los Angeles, Contra Costa and San Bernardino Counties, upon payment by'' Joseph to Thomas of $1,000. The agreement further provides that Thomas ''may lease said property in Kern County for oil or otherwise for the benefit of all the co-owners of said property including [Joseph] . . ., in which event, [Joseph] . . . shall benefit and be entitled to . . . receive . . . free and clear of any claims of [Thomas] . . . his proportionate interest in all net bonuses, rents, royalties and other values as his said interest in said real property bears to the whole thereof. . . . It is further agreed by the parties hereto that this agreement settles all of their differences and disputes of every kind and character and this agreement supercedes all other agreements between the parties. . . .''

The ''Trust Agreement'' between Thomas and Robert was made on December 1, 1943. It recites that Robert had previously deeded to Thomas all of Robert's interest in the Kern County land ''so as to facilitate the prosecution of a partition and quiet title suit'' and so that Thomas ''may conclude oil leases on the whole of'' such land. Thomas agrees that he is holding Robert's interest ''in trust'' for Robert and that ''upon the termination of the present partition and quiet title suit'' he ''will, at any time upon demand, convey back'' to Robert ''free from any claim or claims'' of Thomas, ''except the actual costs and legal fees involved in said partition and quiet title proceeding'' all of Robert's interest in the land. It is further agreed that Thomas ''may lease said property in Kern County, for oil or otherwise and enter into agreements for the operation of said property under such lease for the benefit of all co-owners . . . in which event [Robert] . . . shall . . . be entitled to . . . receive . . . free and clear of any claims of [Thomas] . . . his proportionate interest in all net bonuses, rents, royalties and other values.''

The trial court found that the power of attorney given by Joseph to Thomas ''was in full force and effect'' during all of the times herein involved; that Thomas and the respective plaintiffs made the above agreements ''for the purpose of entering into leases with reference to developing the said property and for the purpose of clearing the property from

. . . leases and assignments which were an apparent cloud thereon and for the purpose of managing, operating and developing said property by negotiating other leases and by managing the property after the leases had been executed and for the purpose of collecting royalties thereon and for all purposes involved in the management of said property; that the powers and authority vested in'' Thomas by such agreements and by the power of attorney from Joseph were ''entirely and solely for the use and benefit of'' plaintiffs but ''subject to the rights conferred upon said defendant THOMAS P. BACON by said agreement[s] and said power of attorney in connection with the management of said property and with the development of the same; that it was the intent of'' the agreements that plaintiffs ''should be entitled to all net bonuses, rents, royalties, and other values developed after . . . THOMAS P. BACON had reimbursed himself for all costs advanced and for all expenses incurred in the management of said property, including attorneys' fees incurred with reference to the management of said property''; that in making the lease with Bering and Adams, Thomas ''was acting pursuant to the authority given to him by the various co-owners and was acting as trustee and as attorney in fact for the various co-owners and so far as'' plaintiffs are ''concerned was acting pursuant to the authority given him by'' the agreements above described ''and by virtue of the authority given to him by the power of attorney'' from Joseph; that the operating agreement between defendants ''was executed by defendant THOMAS P. BACON to defendant Jos. WAHRHAFTIG pursuant to power and authority received from plaintiff[s] . . . and the other co-owners''; that the operating agreement ''was validly executed and entered into and was and is a valid and existing agreement and binding upon the parties hereto; that said agreement was entered into to compensate said defendant Jos. WAHRHAFTIG for all services rendered and to be rendered under and pursuant to said agreement, including the collection and distribution of royalties . . .; that . . . WAHRHAFTIG commenced his performance under said agreement immediately after the execution thereof and has performed all obligations imposed upon him by said agreement; that on many times and occasions subsequent to the execution of said agreement he had conferences with the lessees under said lease, kept in touch with all progress in connection with the entrance of the lessees upon said land and their work under said

lease and the drilling of the well contemplated by said lease, which well was drilled to a depth in excess of 11,000 feet; that on many occasions and in pursuance of his obligations under said contract, said . . . WAHRHAFTIG went to Bakersfield and had conferences both there and in Los Angeles with the lessees under said lease and performed all services contemplated by said agreement and expended time, effort and money in his services under said agreement''; that defendant Wahrhaftig ''claims and asserts the right to have, take and receive 5% of all sums received as royalties under said lease, including 5% of the royalties which would otherwise be payable to plaintiff[s] . . . and that said claim is a valid claim and is based upon'' the operating agreement. The court also made a conclusion of law to the effect that the operating agreement ''is a valid and subsisting agreement,'' and, as stated hereinabove, rendered judgment to that effect and to the further effect that plaintiffs' interests are ''subject to'' such agreement.

Plaintiffs urge that under both general law concerning the powers of trustees and under the terms of their respective agreements with Thomas, the latter was obliged without compensation of any nature to himself supervise the collection and distribution of royalties under the lease and was entitled to make no deduction of any kind or for any purpose from that portion of gross ''rents, bonuses, royalties or other income'' attributable to the interests of plaintiffs in the land. We are of the view, however, that in the light of both the language used in the pertinent documents and the surrounding circumstances, including the objects to be attained and the conduct of the parties, the construction placed by the trial court upon this phase of the transactions between plaintiffs and Thomas is reasonable and fair and must be sustained. (See *Estate of Rule* (1944), 25 Cal.2d 1, 10-11 [152 P.2d 1003, 155 A.L.R. 1319] ; *Transportation Guar. Co.* v. *Jellins* (1946), 29 Cal.2d 242, 254-255 [174 P.2d 625] ; *Palmtag* v. *Danielson* (1947), 30 Cal.2d 517, 522 [183 P.2d 265] ; *Edwards* v. *Billow* (1948), 31 Cal.2d 350, 358 [188 P.2d 748] ; *Taylor* v. *J. B. Hill Co.* (1948), 31 Cal.2d 373, 378 [189 P.2d 258].)

As declared in *Taylor* v. *Selig* (1946), 28 Cal.2d 634, 639 [170 P.2d 913], the meaning of the instruments passing between these parties ''must be ascertained from a reading of the language contained therein, by reference to the surrounding circumstances, the wording of the [instruments] . . ., the

evidence concerning [them] . . ., and the conduct of the parties.'' Here the court had before it the fact that various of the co-owners, including plaintiffs, had conveyed their interests in the Kern County land to Thomas and that the ultimate purpose of his dealing with the land was to lease it for oil development for the profit of the respective owners. To that end Thomas lent his name and a portion of his time without asking personal compensation therefor, but it is apparent that he did not undertake, nor did his agreements with plaintiffs contemplate, either that he should continue his unpaid services indefinitely or that he could employ assistance only at his sole and exclusive expense and could not look to plaintiffs for proportionate shares of such expense. On the contrary the agreements between Thomas and plaintiffs provide that plaintiffs are to receive their shares of *net* ''bonuses, rents, royalties and other values,'' and thus may be understood to recognize that expenses will be incurred to be charged ratably against the various co-owners. Moreover, so far as concerns Joseph, the power of attorney which he executed to Thomas on November 28, 1938, expressly authorizes Thomas to make all contracts with respect to Joseph's interest in the oil land which Joseph himself might make. Joseph argues that the power of attorney was impliedly revoked by the agreement of March 16, 1942; the trial court, however, found to the contrary and upon the state of the record we cannot disturb its finding in this respect. It should also be noted that the agreement between Robert and Thomas expressly authorizes Thomas to ''enter into agreements for the operation'' of the land under any lease thereof, and therefore readily admits of the construction that it confers authority to make the operating agreement with Wahrhaftig.

Plaintiffs point to the undeniable fact that defendant Wahrhaftig was aware that Thomas, in handling the Kern County land, was acting on behalf of plaintiffs and other co-owners as well as for himself. Therefore, argue plaintiffs, Wahrhaftig occupied a position of trust and confidence towards plaintiffs and violated that position when he entered into the 5 per cent operating agreement with Thomas. The trial court found no such violation and none is established as a matter of law. As indicated hereinabove, Thomas was authorized to employ assistance in managing the oil land and, corollarially, to give reasonable compensation therefor. The compensation of 5 per

cent is made contingent upon the receipt of oil royalties; the evidence shows that up to the time of trial Wahrhaftig had performed various services under the operating agreement and had incurred expense in inspecting and reporting on the drilling operations, for none of which had he received compensation or reimbursement and for none of which is either plaintiff liable to any extent until such time as royalties are paid under the oil lease. There appears to us to be no sound basis for holding that as a matter of law the agreement was unfair, unreasonable, or, as claimed by plaintiffs, presumptively fraudulent as to them, or for disturbing the findings and judgment of the trial court upholding the agreement.

### 2. *Joseph's Liability for a Share of Expenses of the Suit.*

Joseph urges that under the terms of his agreement of March 16, 1942, with Thomas, the latter was without authority to charge to Joseph any of the expenses of the suit, but was obliged upon termination thereof to convey back to Joseph all of the lands theretofore conveyed by Joseph to Thomas, "free and clear of any claim" of Thomas except to the payment of the $1,000 provided for in the agreement. Here again, however, we are of the view that the trial court justifiably interpreted the agreement as contemplating that neither Thomas nor the other co-owners should bear that portion of the expenses of the suit which was attributable to Joseph's interest in the land. Certainly Thomas did not undertake to personally finance the suit on Joseph's behalf, and the trial court in charging Joseph with a proportionate share of the expense thereof fairly and equitably construed the agreement involved.

### 3. *Propriety of Expense Account Items.*

As stated hereinabove, Thomas incurred a total expense of $5,184.89 in clearing title to the land, including the prosecution of the partition and quiet-title suit. Of this amount attorneys for one of the co-owner defendants in that suit were paid $250 fees and defendant Wahrhaftig received $3,500 for services and $500 as "Pro rata of expense of trip East to see New York and Chicago charities" which also owned certain of the undivided interests in the Kern County land. Plaintiffs complain that the $250 payment was unauthorized and that the sum paid to Wahrhaftig was excessive and should not have been allowed. They urge in particular that the court did not specifically find that the payments to Wahrhaftig

were reasonable. It is conceded, however, that "the value of attorney's services is a matter with which a judge must necessarily be familiar. When the court is informed of the extent and nature of such services, its own experience furnishes it with every element necessary to fix their value." (*County of Riverside* v. *Brown* (1939), 30 Cal.App.2d 747, 749 [87 P.2d 60], quoting from *Spencer* v. *Collins* (1909), 156 Cal. 298, 307 [104 P. 320, 20 Ann.Cas. 49].) The record discloses that the court was informed of the extent and nature of the services rendered by defendant Wahrhaftig, which included communicating and negotiating with various of the co-owners of the Kern County land, the prosecuting of the partition-quiet-title suit to a conclusion satisfactory to the prospective lessees, and the negotiating of the oil leases. With that information before it the court found that the whole of the $5,000 paid by Bering and Adams plus an additional $184.89 was expended by Thomas "for Court costs, counsel fees, payment for quitclaims and for travelling expenses of counsel in connection with said partition suit and . . . the negotiations for the clearing of" title to the land, and that Thomas had fully accounted for all money received for plaintiffs. Under the circumstances shown we think that the findings made, and the judgment, reasonably imply the further finding that the items of expense complained of by plaintiffs were necessarily incurred and were reasonable in amount. (See *Anglo-California T. Co.* v. *Oakland Rys.* (1924), 193 Cal. 451, 460-461 [225 P. 452]; *Merner Lumber Co.* v. *Brown* (1933), 218 Cal. 136, 139 [21 P.2d 590]; 2 Cal.Jur. 871-873 and cases there cited.) In view of our decision on this phase of the case it becomes unnecessary to discuss other attacks made by plaintiffs upon the trial court's findings with reference to the $5,000 paid to Thomas by Bering and Adams.

### 4. Joseph's Interest in Property in Los Angeles, San Bernardino and Contra Costa Counties.

As mentioned hereinabove, Joseph had conveyed to Thomas, Joseph's interest in real property in Los Angeles, San Bernardino and Contra Costa Counties. The trial court found that of the property at any time held by Thomas for Joseph the "only property remaining" is the Kern County land and that Thomas had accounted for all the other lands; judgment was rendered accordingly. Joseph complains that the evidence does not support the court's finding and that

Thomas is by the finding and the judgment impliedly excused from reconveying to Joseph the Los Angeles, San Bernardino and Contra Costa County lands.

However, upon cross-examination by Joseph's attorney Thomas testified that such properties had been disposed of by "sale or otherwise" and that one piece in San Bernardino County had been "sold for taxes . . . two or three years ago." Upon demand by the attorney for a description of the land in Contra Costa County, Thomas answered: "Well, Joe has the documents, if you want to see them, he has as much knowledge of that property as I have. . . . What is the difference, the property was sold." The record also shows the following question and answer: "Q. [By Mr. Siemon] So far as you are concerned, the only thing you got was this $5,000? A. [By Thomas] That's correct." Whether the quoted question and answer were intended to refer to consideration for anything other than for the oil lease is not clear, but if they do not it would seem that plaintiffs were satisfied with Thomas' general statements on the subject, as above quoted. Joseph did not dispute any of Thomas' statements; he offered no contrary evidence, nor any evidence that such interest as he had had in the mentioned properties in the three counties possessed any value, or that payments on any sales thereof had not been made directly to him, or that Thomas had received any value therefor or retained any interest therein to which Joseph was entitled. Under such circumstances it appears that the trial court was warranted in accepting Thomas' testimony and in inferring and in finding that Thomas had accounted directly to Joseph for the latter's interest in the lands in Los Angeles, San Bernardino and Contra Costa Counties.

For the reasons above set forth, the judgment is affirmed.

Gibson, C. J., Shenk, J., Edmonds, J., Carter, J., Traynor, J., and Spence, J., concurred.