[No. S035028. Dec. 1, 1994.]

HAL RAPPLEYEA, Plaintiff and Respondent, v.
KEN CAMPBELL et al., Defendants and Appellants.

**COUNSEL**

Mendes & Mount, Donald K. Fitzpatrick, Joan E. Havens and Michael S. Patterson for Defendants and Appellants.

Mark S. Simonian for Plaintiff and Respondent.

**OPINION**

**MOSK, J.**—The question is whether a default must be set aside and a default judgment reversed on the ground of abuse of discretion. We conclude that they must be, and reverse the Court of Appeal's judgment.

Defendants, Arizona residents, were personally served with a summons and complaint on November 1, 1990. Defendants chose to proceed in propria persona and had an Arizona lawyer, apparently an old friend of theirs, telephone the Los Angeles Superior Court for information on filing procedures. The clerk's office told the lawyer's staff that the filing fee was $89, according to the lawyer's sworn statement. Defendants answered by mail from Arizona on or about November 26, enclosing $89. The clerk's office received the answer by November 29.

The clerk's office had misadvised defendants' informal counsel. The $89 fee was correct for a single defendant's answer. The correct filing fee for two defendants to answer was $159. The clerk's error led to a default judgment against defendants of $200,240.39.

The procedural alchemy that transformed a $70 error into a judgment for more than $200,000 is not particularly complicated. Defendants had 30 days to file their answer after they were served. (Code Civ. Proc., § 412.20, subd. (a)(3).) Their answer, if filed when first presented, hence would have been timely. But when the Los Angeles Superior Court Clerk's Office received defendants' answer and $89 check, it rejected and returned the answer. Defendants promptly sent back their answer with the correct fee, and the answer was filed on December 11, 1990.

Hence defendants' answer was filed eight days late. Meanwhile, on December 4, 1990, the first possible day to do so, plaintiff had applied to the clerk to enter default against defendants. Plaintiff mailed a copy of his application to defendants. The clerk entered defendants' default that day.

The record leaves murky the course of events after plaintiff applied for defendants' default. (Both plaintiff and defendants seek judicial notice of various documents they believe will clarify matters. (Evid. Code, §§ 452, 459, subd. (a).) The requests are denied.) In brief, plaintiff contends he repeatedly warned defendants they must apply to the court for relief from default, but defendants paid no heed. Defendants in effect contend plaintiff led them to miss the deadline to apply for statutory relief from default by falsely saying he would stipulate to such an application. It is difficult to discern exactly who said what to whom after the default. The scanty record shrouds much of the case in mist.

Whatever communications occurred, the parties agree defendants were naïve to rely on themselves to protect their substantial legal interests in terms of money involved. They disagree about whether that naïveté compels a legal remedy. Naïveté does not, but two key undisputed facts do. As stated, the clerk's office misinformed defendants about the amount of money due for an answer by two defendants. And as we explain, plaintiff misinformed defendants about the legal effect of the resulting default. These facts govern our decision, rather than a view that defendants' improvident initial self-representation particularly entitles them to the balm of relief from default. Procedural law cannot cast a sympathetic eye on the unprepared, or it will soon fragment into a kaleidoscope of shifting rules.

On May 24, 1991, plaintiff's counsel diametrically misdescribed California law to these lay defendants, writing to inform them that "You may *not* claim that the default entered was taken against you through inadvertence, mistake, or excusable neglect." (Italics added.) To the contrary, Code of Civil Procedure section 473 (hereafter section 473) provides that a court has discretion to relieve a party "from a judgment, dismissal, order, or other proceeding taken against him or her through his or her mistake, inadvertence, surprise, or excusable neglect. Application for this relief . . . shall be made within a reasonable time, in no case exceeding six months, after the judgment, dismissal, order, or proceeding was taken." (The quoted language of section 473 is slightly but not materially different from that in effect in 1991.) The effect of plaintiff's letter, intended or not, was to advise these self-represented Arizona defendants they had forfeited California legal rights that they in fact retained under section 473 before the statute's six-month limitation expired.

Late in October 1991 defendants learned a default judgment might soon be entered against them. The court mailed a minute order to them announcing that "[t]he Court would enter judgment for plaintiff against the Campbells (and others) if [plaintiff's] papers were sufficient." The court's communication apparently sounded an alarm that plaintiff's asserted warnings failed to do, because defendants quickly moved to set aside the clerk's entry of default, appearing in propria persona on December 9, 1991. The motion was argued and on January 15, 1992, was denied on the ground that good cause had not been shown under section 473. Defendants then retained counsel, who filed a motion for reconsideration. That motion was denied as untimely.

Meanwhile, plaintiff's case was suffering its own setbacks. Plaintiff was unable to prove his damages and thereby obtain a judgment until after defendants had moved for, and been denied, relief from default. Indeed, on several occasions the court ordered plaintiff "to show cause why sanctions should not be imposed for your failure to file default prove-up." At each scheduled hearing, including two after the motion for relief from default was filed, the matter was continued, usually at plaintiff's request. But at one prove-up hearing in May 1991 plaintiff failed to appear or to obtain a continuance, and the court imposed $500 in sanctions against his counsel. In October 1991 plaintiff did try to prove damages, but failed. It was the latter proceeding that motivated the court to warn defendants a default judgment could be entered.

A default judgment was finally entered on January 29, 1992. Defendants appealed. A divided Court of Appeal affirmed.

There is little question we would have found an abuse of discretion if relief had been denied within the six-month period governed by section 473. Because the law favors disposing of cases on their merits, "any doubts in applying section 473 must be resolved in favor of the party seeking relief from default [citations]. Therefore, a trial court order denying relief is scrutinized more carefully than an order permitting trial on the merits." (*Elston* v. *City of Turlock* (1985) 38 Cal.3d 227, 233 [211 Cal.Rptr. 416, 695 P.2d 713]; see also *Miller* v. *City of Hermosa Beach* (1993) 13 Cal.App.4th 1118, 1136 [17 Cal.Rptr.2d 408].)

The trial court in fact ruled on the ground that good cause was not shown under section 473 to set aside the default. The legal basis for that ruling was incorrect, because more than six months had elapsed from the entry of default, and hence relief under section 473 was unavailable. (*Aldrich* v. *San Fernando Valley Lumber Co.* (1985) 170 Cal.App.3d 725, 735, fn. 3 [216

Cal.Rptr. 300].) ■ But we cannot undo the effect of the ruling or the ensuing judgment on the ground that the court may have misapplied section 473 as long as any other correct legal reason exists to sustain either act. (See *D'Amico* v. *Board of Medical Examiners* (1974) 11 Cal.3d 1, 19 [112 Cal.Rptr. 786, 520 P.2d 10].)

■ Moreover, the order denying the motion to vacate the default is not independently appealable. (*Jade K.* v. *Viguri* (1989) 210 Cal.App.3d 1459, 1465 [258 Cal.Rptr. 907].) However, there is authority for the view that it may be reviewed on an appeal from the judgment, as was noticed here. (*Winter* v. *Rice* (1986) 176 Cal.App.3d 679, 682 [222 Cal.Rptr. 340].) As plaintiff does not challenge the order's reviewability, we will review both the entry of default and the judgment that followed it.

■ We therefore inquire whether there is another ground on which the court could properly have denied the motion to set aside the default. The question is one of the court's equitable power. If the court could properly refuse to invoke that power to vacate the order, its ruling and the ensuing judgment must be sustained.

■ After six months from entry of default, a trial court may still vacate a default on equitable grounds even if statutory relief is unavailable. (*Olivera* v. *Grace* (1942) 19 Cal.2d 570, 575-576 [122 P.2d 564, 140 A.L.R. 1328].) ■ We review a challenge to a trial court's order denying a motion to vacate a default on equitable grounds as we would a decision under section 473: for an abuse of discretion. (*In re Marriage of Park* (1980) 27 Cal.3d 337, 347 [165 Cal.Rptr. 792, 612 P.2d 882]; see *Weitz* v. *Yankosky* (1966) 63 Cal.2d 849, 854, 856 [48 Cal.Rptr. 620, 409 P.2d 700] [default judgment].)

■ One ground for equitable relief is extrinsic mistake—a term broadly applied when circumstances extrinsic to the litigation have unfairly cost a party a hearing on the merits. (*In re Marriage of Park, supra*, 27 Cal.3d at p. 342; cf. *In re Marriage of Stevenot* (1984) 154 Cal.App.3d 1051, 1066-1067 [202 Cal.Rptr. 116] [criticizing rule].) "Extrinsic mistake is found when [among other things] . . . a mistake led a court to do what it never intended . . . ." (*Kulchar* v. *Kulchar* (1969) 1 Cal.3d 467, 471-472 [82 Cal.Rptr. 489, 462 P.2d 17, 39 A.L.R.3d 1368]; see *Sullivan* v. *Lumsden* (1897) 118 Cal. 664, 669 [50 P. 777] [referees' use of wrong map was extrinsic mistake and equitable relief was available because " 'it is not a mistake of the law, or an inadvertent conclusion as to what the law is, but a mistake or inadvertence in doing something not intended to be done.' "].)

When a default *judgment* has been obtained, equitable relief may be given only in exceptional circumstances. "[W]hen relief under section 473 is

available, there is a strong public policy in favor of granting relief and allowing the requesting party his or her day in court. Beyond this period there is a strong public policy in favor of the finality of judgments and only in exceptional circumstances should relief be granted." (*In re Marriage of Stevenot, supra,* 154 Cal.App.3d at p. 1071; see *Aheroni v. Maxwell* (1988) 205 Cal.App.3d 284, 291 [252 Cal.Rptr. 369].)

Apparently to further the foregoing policy, one appellate court has created a stringent test to qualify for equitable relief from default on the basis of extrinsic mistake. "To set aside a *judgment* based upon extrinsic mistake one must satisfy three elements. First, the defaulted party must demonstrate that it has a meritorious case. Second[ ], the party seeking to set aside the default must articulate a satisfactory excuse for not presenting a defense to the original action. Last[ ], the moving party must demonstrate diligence in seeking to set aside the default once . . . discovered." (*Stiles v. Wallis* (1983) 147 Cal.App.3d 1143, 1147-1148 [195 Cal.Rptr. 377], italics added.) The stringent three-part formula of *Stiles* was followed by *In re Marriage of Stevenot, supra,* 154 Cal.App.3d at page 1071, an extrinsic fraud case.

 But this case is unlike *Aheroni v. Maxwell, supra,* 205 Cal.App.3d 284, *In re Marriage of Stevenot, supra,* 154 Cal.App.3d 1051, or *Stiles v. Wallis, supra,* 147 Cal.App.3d 1143, because the policy of leaving judgments final is not implicated here as it was in those decisions. Plaintiff did not obtain a default judgment until January 29, 1992, by which time defendants had moved for, and been denied, relief from default. In the meantime, plaintiff had shown scant interest in obtaining a judgment. Thus, to the extent the policy disfavoring equitable relief is based on an understandable distaste for the forfeiture of a judgment, which is vested personal property (Civ. Code, § 14, subd. 3; *Anglo-California T. Co. v. Oakland Rys.* (1924) 193 Cal. 451, 468-469 [225 P. 452]), the policy's basis is weaker in this case. Indeed, the record before us strongly suggests that the prejudice to plaintiff from defendants' motion, if that motion had succeeded, would have been virtually nil.

We need not decide, however, whether a test much different from that articulated in *Marriage of Stevenot, supra,* 154 Cal.App.3d at page 1071, and *Stiles v. Wallis, supra,* 147 Cal.App.3d at pages 1147-1148, applies to requests for equitable relief when a default judgment has not been entered. Even under that stringent three-pronged test this case's odd facts entitle defendants to relief.

We first examine whether defendants have a satisfactory excuse for failing to timely answer in the original action. To our minds, this is the same as

asking whether an extrinsic mistake occurred—as relevant here, whether "a mistake led a court to do what it never intended . . . ." (*Kulchar* v. *Kulchar*, *supra*, 1 Cal.3d at pp. 471-472.) We conclude that the clerk's misunderstanding of the number of answering defendants constituted an extrinsic mistake. The court never intended to have defendants send the fee applicable to a sole defendant and thereby default, but that was the effect of the clerk's ministerial action.

Defendants' situation is similar to that of the defendant in *Baske* v. *Burke* (1981) 125 Cal.App.3d 38 [177 Cal.Rptr. 794] who, when served with a summons and complaint for partition and sale of a valuable painting, wrote to the court clerk at least five times. "These communications were placed in the court records but [were] never filed as a response or answer to [the] complaint—despite [the defendant's] written request to 'do what was needed [to] file,' an offer to 'pay fees needed' and [her] claim of right [to] '¼ interest' in the painting." (*Id.* at p. 41, fourth set of brackets in original.)

On those facts, *Baske* v. *Burke, supra*, 125 Cal.App.3d 38, properly affirmed an equitable order setting aside the entry of default on the ground of extrinsic mistake caused by clerical error, even though almost a year and a half had elapsed from the entry of default. "The doctrine of relief in equity from mistake has applied where the mistake is that of the clerk of the court." (*Id.* at p. 44.)

We next examine whether the defense has merit. Ordinarily a verified answer to a complaint's allegations suffices to show merit. (*Stiles* v. *Wallis, supra*, 147 Cal.App.3d at p. 1148.) The answer here was not verified, but neither was the complaint. Moreover, the answer did deny, admit, or otherwise respond to the allegations. And the Arizona lawyer who informally aided defendants declared under oath that he believed "these Defendants have a very good (and certainly a justiciable) defense to the Plaintiff's claim." On the combined strength of these facts, we believe defendants have sufficiently shown merit.

The final prong of the stringent three-part test set forth in *Stiles* v. *Wallis, supra*, 147 Cal.App.3d at page 1148, is whether defendants diligently tried to set aside the default once discovered.

"The greater the prejudice to the responding party, the more likely it is that the court will determine that equitable defenses such as laches or estoppel apply to the request to vacate a valid judgment." (*In re Marriage of Stevenot, supra*, 154 Cal.App.3d at p. 1071.) Of the three items a defendant must show to win equitable relief from default, diligence is the most

inextricably intertwined with prejudice. If heightened prejudice strengthens the burden of proving diligence, so must reduced prejudice weaken it. ■ Under that view, and given this record, we believe defendants have sufficiently shown diligence.

Prejudice to a plaintiff is obviously less if judgment has not been entered when a defendant seeks equitable relief. Therefore, we believe the diligence prong simply cannot assume the importance here that it would in the ordinary case wherein the trial court would be reversing a judgment and divesting a plaintiff of a property right by granting equitable relief from default. Indeed, the court kept admonishing plaintiff that if he himself did not try more diligently to prove damages, he would be sanctioned, and once his counsel was sanctioned for failing to appear at a prove-up hearing. This indifference belies any claim plaintiff might make of eagerness to obtain an early judgment. And plaintiff incorrectly told defendants they had forfeited their legal right to seek statutory relief. These unusual facts greatly weaken any possible assertion of prejudice, and correspondingly lower the burden on defendants of showing diligence.

Under this reduced standard, defendants were not callously derelict in seeking to set aside the default. To be sure, they did not move for relief from default until December 9, 1991, more than a year after this litigation ensued; and plaintiff asserts, with some confirming evidence, that he warned defendants they were in default. However, the evidence that before October 1991 defendants understood the legal *consequences* to them personally of being in default, in a case with 12 other named and 20 Doe defendants, is confined to the boilerplate language on the face of the summons. When in October 1991 the court told defendants they might soon face a default judgment, they acted quickly. We believe defendants acted diligently enough to satisfy that requirement for equitable relief.

Having satisfied all three prongs of the stringent test, we conclude that the clerk's entry of default must be set aside and the default judgment reversed.

We draw our conclusion narrowly. The clerk's error and plaintiff's incorrect statement of the law together persuade us that the court abused its discretion when it denied defendants' motion. These rare events should not combine to make defendants suffer a $200,240.39 judgment without a hearing on the merits.

■ As alluded to, however, we make clear that mere self-representation is not a ground for exceptionally lenient treatment. Except when a particular rule provides otherwise, the rules of civil procedure must apply equally to

parties represented by counsel and those who forgo attorney representation. (See *Lawrence* v. *Superior Court* (1988) 206 Cal.App.3d 611, 619, fn. 4 [253 Cal.Rptr. 748].) To the extent it articulates a contrary view, *Pete* v. *Henderson* (1954) 124 Cal.App.2d 487, 491 [269 P.2d 78, 45 A.L.R.2d 58] should very rarely, if ever, be followed. A doctrine generally requiring or permitting exceptional treatment of parties who represent themselves would lead to a quagmire in the trial courts, and would be unfair to the other parties to litigation. Although in reaching our decision we have incidentally considered whether parties in defendants' position would reasonably have relied on advice from the clerk's office and whether they would have understood the meaning of a default, our focus is on the clerk's and plaintiff's incorrect advice rather than on defendants' ill-advised self-representation.

The Court of Appeal's judgment is reversed with directions to reverse the default judgment and to instruct the trial court to set aside the entry of default.

Kennard, J., and Arabian, J., and George, J., concurred.

**ARABIAN, J.**—I concur fully in the opinion by Justice Mosk.

Defendants, an out-of-state couple who unwisely chose to represent themselves, *timely* presented their answer for filing. But in a story line worthy of a Franz Kafka novel, an innocent $70 error at the outset led, after a series of misadventures, to a $200,000 default judgment. Defendants should have moved to set aside the default immediately, but unwisely chose to continue negotiating with plaintiff's lawyer. Their delay, however, pales before that of plaintiff, who faced repeated orders to show cause why sanctions should not be imposed for his own delays before he finally proved his damages *after defendants had requested and been denied relief from default.* I find it insidious that plaintiff's attorney wrote his first "get tough" letter to defendants a scant few days before the six-month period of Code of Civil Procedure section 473 expired. Coincidence? Or was plaintiff stringing defendants along until the six months had passed?

The majority is correct that special privileges cannot be shown litigants who choose to represent themselves. But they should not be penalized *because* they represent themselves. In extreme cases like this, legal technicalities must, and under our statutes may, be tempered by justice.

Justice Johnson stated in dissent in the Court of Appeal that these defendants "were at a special disadvantage since they resided in another state. . . . Time limits and procedural technicalities they lacked the expertise to know about were turned against [them] at every stage of the proceedings.

"Their adversary, represented by counsel, took advantage of [defendants'] lack of counsel and their ignorance of California procedure to tie them in

knots. He and his lawyer alternately lulled these [defendants] into a belief [plaintiff] would sign a stipulation to vacate the default and then misinformed them they had no grounds for a motion to vacate the default. When they ultimately received notice from the court they could and should seek to vacate the default, it was too late to proceed under Code of Civil Procedure section 473. In a cursory proceeding, the trial court denied relief under equity . . . . Then when they finally realized what had happened to them and found a California lawyer to represent them, it was found to be too late. Sorry, no reconsideration. The game is over.

". . . Equity demands, and the law allows, relief from default in this case."

I agree.

George, J., concurred.

**BAXTER, J.**—I respectfully dissent. The majority undertake to rescue these litigants from the consequences of their own procrastination. In so doing, the majority create uncertainty in the law and encourage others to seek review in this court of decisions which are correctly decided by the Court of Appeal and present no important issue of law. (Cal. Rules of Court, rule 29(a).)[1]

While reciting in detail a litany of error and omission which placed defendants in the unfortunate position of judgment debtors, the majority fail to identify the sole issue in this case. That question is whether the Court of Appeal erred in holding that the trial court did not abuse its discretion in refusing to grant equitable relief to defendants. It did not. Moreover, the Court of Appeal properly applied the rule governing appellate review of such discretionary trial court rulings, a rule which the majority fail even to acknowledge, let alone apply. Since the majority appear to have overlooked the applicable law, it is appropriate to restate it in the hope that the bench and bar will not construe this aberrational decision as a repudiation of its force.

"In reviewing the evidence in support of a [Code of Civil Procedure] section 473 motion, we extend all legitimate and reasonable inferences to uphold the judgment. The disposition of such a motion rests largely in the discretion of the trial court, and *its decision will not be disturbed on appeal*

---

[1]Rule 29(a): "Review by the Supreme Court of a decision of a Court of Appeal will be ordered (1) where it appears necessary to secure uniformity of decision or the settlement of important questions of law; (2) where the Court of Appeal was without jurisdiction of the cause; or (3) where, because of disqualification or other reason, the decision of the Court of Appeal lacks the concurrence of the required majority of qualified judges."

*unless there has been a clear abuse of discretion.* Although precise definition is difficult, it is generally accepted that the appropriate test of abuse of discretion is whether or not the trial court exceeded the bounds of reason, all of the circumstances before it being considered. [Citations.] We have said that when two or more inferences can reasonably be deduced from the facts, *a reviewing court lacks power to substitute its deductions for those of the trial court.*" (*In re Marriage of Connolly* (1979) 23 Cal.3d 590, 597-598 [153 Cal.Rptr. 423, 591 P.2d 911], italics added; see also *Shamblin* v. *Brattain* (1988) 44 Cal.3d 474, 478-479 [243 Cal.Rptr. 902, 749 P.2d 339]; *Ayala* v. *Southwest Leasing & Rental, Inc.* (1992) 7 Cal.App.4th 40, 44-45 [8 Cal.Rptr.2d 637]; *MJM, Inc.* v. *Tootoo* (1985) 173 Cal.App.3d 598, 603-604 [219 Cal.Rptr. 100].)[2]

The Court of Appeal, recognizing that a ruling on a section 473 motion or on a motion addressed to the equitable power of the court to set aside a default or default judgment lies within the sound discretion of the trial court, properly refrained from simply substituting its judgment for that of the trial court. The majority fail to explain the manner in which the Court of Appeal erred in doing so. Instead it proceeds to do that which neither the Court of Appeal nor this court may do. It has substituted its judgment for that of the trial court. I find no explanation in the majority opinion for this failure to acknowledge or apply well-established law.

Nor do I find an explanation of the relevance of many of the evidentiary facts recited and relied on by the majority. The erroneous advice given defendants by the clerk regarding the filing fee is relevant only insofar as it establishes that the default was taken as a result of a mistake by defendants

[2]All statutory references are to the Code of Civil Procedure.

The scope of appellate review is no broader in cases such as this in which the trial court ruled on the basis of conflicting affidavits without holding an evidentiary hearing. "In the consideration of an order made on affidavits involving the decision of a question of fact, the appellate court is bound by the same rule as where oral testimony is presented for review. [Citations.] When an issue is tried on affidavits, the rule on appeal is that those affidavits favoring the contention of the prevailing party establish not only the facts stated therein but also all facts which reasonably may be inferred therefrom, and where there is a substantial conflict in the facts stated, a determination of the controverted facts by the trial court will not be disturbed." (*Griffith Co.* v. *San Diego College for Women* (1955) 45 Cal.2d 501, 508 [289 P.2d 476, 47 A.L.R.2d 1349].) This rule applies to review of rulings on section 473 motions. (*Lynch* v. *Spilman* (1967) 67 Cal.2d 251, 259 [62 Cal.Rptr. 12, 431 P.2d 636]; *Outdoor Imports, Inc.* v. *Stanoff* (1970) 7 Cal.App.3d 518, 522 [86 Cal.Rptr. 593].) If the reviewing court were free to reject the inferences presumably drawn by the trial court, it would not be deciding if the trial court clearly abused its discretion in denying relief. Instead it would substitute its judgment for that of the trial court by deciding the merits of the 473 motion itself. Any ruling on such a motion would then be subject to appeal not on abuse of discretion grounds, but simply on an invitation to the appellate court to disagree with the trial court on the strength of the evidence.

that resulted in their failure to file a timely answer to the complaint. Thus, in December 1990 defendants had a basis for immediately seeking relief from default under section 473. That is the only relevance of the clerk's action.

The statement of plaintiff's counsel regarding the grounds on which relief from default might be sought is relevant only if defendants were misled by the statement *and* that fact contributed to defendants' failure to file a timely section 473 motion. The record permits an inference that the statement was not directed to, and defendants would not have understood the advice to be directed to, whether they could seek relief from default on the basis of the filing fee misunderstanding, however. Instead, it appears to have been directed to defendants' delay in seeking relief for what was then five months from the time they learned that the default had been entered, notwithstanding advice from plaintiff's counsel that they would have to seek judicial relief from that action.[3] If the trial court could have drawn that inference, this court must assume that it did so.

Alternatively, the trial court may have concluded that defendants' delay of five months after learning that default had been entered, a delay that occurred *before* they were advised by plaintiff's counsel that they could not claim inadvertence, mistake or excusable neglect, was itself a sufficient basis on which to deny the motion. Section 473 does not permit a litigant to delay for six months in seeking relief from default. Rather, it requires that the motion be made "within a reasonable time, in no case exceeding six months, after the judgment . . . ." (*Ibid.*) Six months is the outside limit. "Defendant has not cited, nor has independent research disclosed, any case in which a court has set aside a default where, in making application therefor, there has been an unexplained delay of anything approaching three months after full

---

[3]The context in which plaintiff's counsel stated in a May 24, 1991, letter to defendants that they "may not claim that the default entered was taken against you through inadvertence, mistake, or excusable neglect" fully justifies the trial court's implicit conclusion that this statement did not mislead defendants with regard to the availability of relief. The statement was made at the end of the letter which recited counsel's past efforts to settle the case, his discussion with them about the untimely answer, their unkept promises to provide information, and counsel's belief that they, like a codefendant, had made promises they failed to keep. He then stated: "You have been given actual notice prior to and after notice of default and plaintiff has done everything reasonable to obtain a pleading or any timely appearance for the last six months," after which the remark about the grounds on which relief from default was available was made. It is a permissible inference that the statement was simply counsel's assessment that any claim made at that time, five months after the default had been entered, that the default was taken as a result of inadvertence, mistake, or excusable neglect would be unreasonable in light of the history of the communications between plaintiff, his counsel, and defendants.

Counsel's assessment that a motion on the stated grounds to set aside the default would not be found meritorious ultimately proved to be accurate. The trial court denied the motion because "good cause was not shown."

knowledge of the entry of the default. . . . [¶] . . .While the statutory six-month limitation is the 'standard or criterion in all cases' [citations] as the measure of the court's jurisdiction to grant relief in any event, the 'reasonable time' test stands as an independent consideration and in any given situation, its determination, within the maximum six-month period, 'depends upon the circumstances of that particular case.' " (*Benjamin* v. *Dalmo Mfg. Co.* (1948) 31 Cal.2d 523, 529-530 [190 P.2d 593].)

The majority assert that the record is "murky" regarding the events after plaintiff applied to have defendants' default entered. (Maj. opn., *ante*, at p. 979.) It is so only because the majority fail to imply that the trial court made all findings on disputed evidence necessary to support its ruling. When one does so, there is no murk. Based on undisputed evidence, and assuming that the trial court made all the findings on disputed facts and drew all reasonable inferences from the facts that would support its ruling, the record shows the following:

Defendants were notified by mail of the request for entry of default. That notice was given to them prior to the filing of the request. They were informed when their untimely answer to the complaint was filed that their default had been entered. Exhibits attached to their motion to set aside the default confirm that defendants were aware in December 1990 that their default had been entered. They were advised by plaintiff's counsel both before and after the default was entered that, even with stipulations, a motion to set aside the default would have to be made. Plaintiff himself gave defendants the same advice. Neither plaintiff nor his counsel represented to defendants that he would stipulate to set aside the default, however. Finally, plaintiff's counsel did not receive a copy of a stipulation to set aside the default from defendants until November 3, 1991, 11 months after entry of default, and that document was signed only by Ken Campbell.

As the majority acknowledge, defendants' motion was not made within six months and the sole source of authority to set aside the judgment lies in the trial court's equitable power to set aside the judgment on grounds that "extrinsic factors have prevented one party to the litigation from presenting his or her case." (*In re Marriage of Park* (1980) 27 Cal.3d 337, 342 [165 Cal.Rptr. 792, 612 P.2d 882].) Here, however, since defendants knew immediately that their default had been taken, the question is not whether an extrinsic factor prevented them from filing their answer and litigating the merits, but whether any extrinsic factor led to their failure to file a reasonably timely section 473 motion. The majority identify no evidence which the trial court could not reasonably have disbelieved or rejected as a basis for concluding that relief from default was warranted. The record establishes

beyond any question that defendants were aware the default had been taken and that if they were to avoid having judgment entered against them they would have to seek relief from default. The majority note disputed evidence on whether plaintiff led defendants to believe that plaintiff would stipulate to relief, but the majority do not accept the trial court's implicit rejection of that evidence as a basis for relief. The trial court could reasonably have done so, as plaintiff offered evidence that he had repeatedly told defendants that an application for relief from default would have to be made, but defendants failed to apply within a reasonable time. The Court of Appeal found nothing in the record to justify disturbing the implied finding of the trial court that plaintiff's actions had not lulled defendants into a false sense of security and thereby prevented them from participating in the action. The majority offer no explanation or authority for substituting its judgment for that of the trial court.

It is irrelevant for these purposes that the trial court mistakenly believed that it was ruling on a motion made pursuant to section 473. Had the motion been a timely section 473 motion, there would be no basis for a conclusion that the trial court erred in rejecting that evidence or for holding that the court abused its discretion in denying the section 473 motion. It follows that there is no basis in the same evidence for an exercise of the court's equitable power to set aside the judgment. A party seeking equitable relief must make an even stronger showing than that necessary for relief under section 473 (*Aheroni* v. *Maxwell* (1988) 205 Cal.App.3d 284, 291 [252 Cal.Rptr. 369]), which these defendants did not do. There are no extrinsic facts that the trial court did not consider when it denied what it believed was a section 473 motion.

The law governing relief on grounds of extrinsic fraud discussed in *Kulchar* v. *Kulchar* (1969) 1 Cal.3d 467 [82 Cal.Rptr. 489, 462 P.2d 17, 39 A.L.R.3d 1368], on which the majority rely, has no application here. Equitable relief on grounds of extrinsic fraud or mistake is not a substitute for section 473 relief. When fraud or mistake is discovered within the time limits established by section 473, relief is available pursuant to that section. This is not a policy question related to the importance of finality of judgment, as the majority suggest. The Legislature has established the time within which relief on grounds of mistake may be sought by a party who is aware of the mistake. The failure to seek that relief on a timely basis necessarily forecloses the availability of equitable relief unless time of discovery of the mistake or fraud or other circumstances made it impossible for the party to make a timely motion under section 473. Deeming the motion one for equitable relief does not expand the time within which a motion should be made by a party who is aware of the grounds for such

relief. The party must demonstrate diligence in attempting to seek relief under section 473. (See, e.g., *Higley* v. *Bank of Downey* (1968) 260 Cal.App.2d 640, 644 [67 Cal.Rptr. 365].) Concepts of inexcusable neglect and laches apply to motions seeking equitable relief. The court must consider the reasonableness of a party's failure to seek relief within the statutory time limit. (See *In re Marriage of Park, supra,* 27 Cal.3d 337, 345.) Since plaintiffs failed to justify their failure to make a timely motion under section 473, the trial court would have abused its discretion had it treated their motion as one for equitable relief and granted it.

Nor is lack of prejudice to the opposing party determinative.[4] This court simply has no power to create an alternative remedy which makes relief available to persons who have knowledge of the facts on which relief may be sought under section 473 but inexcusably fail to comply with the statutory time limit. Lack of prejudice to the other party does not "automatically enable one who fails to make his motion within six months of the default to set aside the judgment by appealing to the equity powers of the court. To hold otherwise would encourage litigants to wait until the six-month period elapses before moving to set a default judgment aside. To the extent that the court's equity power to grant relief differs from its power under section 473, the equity power must be considered narrower, not wider." (*Weitz* v. *Yankosky* (1966) 63 Cal.2d 849, 857 [48 Cal.Rptr. 620, 409 P.2d 700], italics omitted.)

There is no basis in this record for a conclusion that the trial court abused its discretion in denying defendants' motion to set aside their default or for holding that defendants are entitled to equitable relief. The Court of Appeal did not err in affirming the judgment of the trial court. I would affirm the judgment of the Court of Appeal.

Lucas, C. J., and Werdegar, J., concurred.

---

[4]In fact the trial court may well have concluded that there was prejudice to plaintiff from the delay. The majority's assertion that the prejudice to plaintiff from granting the belated motion for relief from default was "virtually nil" is speculative (maj. opn., *ante,* at p. 982), and overlooks the showing of prejudice made by plaintiff who asserted in opposition to the motion that two other defendants had initiated bankruptcy proceedings which affected his ability to obtain needed testimony, witnesses, and evidence, and that other witnesses and evidence were no longer available to him as a result of the time that had elapsed.