Filed 7/24/13  Century Community Lending v. Saleh CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| CENTURY COMMUNITY LENDING COMPANY, | B240487 |
| Cross-complainant and Respondent, | (Los Angeles County Super. Ct. No. EC051593) |
| v. | |
| JACKIE SALEH, | |
| Cross-defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Laura A. Matz, Judge.  Reversed with directions.

Alexander & Yong, Jeffrey S. Yong and John J. Aumer for Cross-defendant and Appellant.

Bergman Dacey Goldsmith, Gregory M. Bergman, Richard A. Fond and Omar H. Bengali for Cross-complainant and Respondent.

_____

# INTRODUCTION

Cross-defendant Jackie Saleh appeals from an order denying her motion to vacate a default and default judgment entered against her and in favor of cross-complainant Century Community Lending Company. She contends the trial court abused its discretion in denying her motion, which sought relief on equitable grounds. We reverse.

# FACTUAL AND PROCEDURAL BACKGROUND

### A. *The Loan*

Jackie Saleh (Jackie) and her husband Salah Saleh (Salah)[1] owned property located at 11835 Vanowen Street in North Hollywood. The property consisted of a liquor store and a separate residence in which the Salehs lived with their two sons.

Salah talked to representatives of Century Community Lending Company (CCLC) about obtaining a loan to build a 10-unit apartment building on the property. As a condition for the loan, CCLC had to approve the contractor for the apartment project. CCLC chose Urban Pacific Construction, Inc. (Urban) as the general contractor.

On December 1, 2008 the Salehs formed Samax Development, LLC (Samax) for the sole purpose of acting as the borrower and developer for the apartment project, and contracted with Urban to act as general contractor. Salah was the sole member of Samax. On February 11, 2009 the Salehs executed a grant deed transferring their interests in the property to Samax. The Salehs recorded the grant deed on April 10, 2009.

On April 8, 2009 CCLC and Samax executed a construction loan agreement in which CCLC agreed to lend Samax $1,782,500 to finance the apartment project. Although Jackie was not a member of Samax, she executed the loan agreement, the

---

[1]     Salah is not a party to this appeal.

promissory note, and deed of trust, along with Salah. The Salehs also personally guaranteed the construction loan.

On October 27, 2009 CCLC declared the loan in default and recorded a notice of default. A trustee's sale occurred on February 18, 2010. The trustee's deed upon sale stated that the "Grantee herein was the foreclosing Beneficiary," the "amount of the unpaid debt together with costs was $535,174.54," and the "amount paid by the Grantee at the Trustee's Sale was $535,174.54."

B.    *The Litigation*

On November 24, 2009 Urban sued Samax, Salah, CCLC, and the Century Housing Corporation (CHC) for breach of contract, common count, foreclosure of mechanic's liens, and violation of Civil Code section 3260.1.[2] When Salah and Samax failed to file a timely answer, Urban filed a request to enter their defaults, which the trial court granted. Salah and Samax then retained attorney Robert Y. Lee, who filed a motion to set aside the defaults, along with a proposed answer and cross-complaint. On May 28, 2010 the trial court granted the motion, which Urban did not oppose, and allowed Salah and Samax to file an answer to the complaint. That same day, Samax and Salah filed a cross-complaint against Urban, CCLC, and CHC for negligence, breach of contract, negligent misrepresentation, fraud, civil conspiracy, and unlawful business practices in violation of Business and Professions Code section 17200.

On July 29, 2010 CCLC filed a cross-complaint for breach of contract against the Salehs, and served it on Lee. On August 16, 2010 Lee signed a notice and acknowledgement of receipt on behalf of Jackie for CCLC's cross-complaint. The notice specified that the party CCLC was serving was "Jackie Saleh." On September 21, 2010 CCLC filed the notice and acknowledgment of receipt of service signed by Lee.

---

**2**    Urban, Samax, and CHC are not parties to this appeal.

3

C.    *The Default Judgment*

Lee did not file a response to CCLC's cross-complaint on behalf of the Salehs.  On September 21, 2010 CCLC filed a request for entry of default against them.  The trial court entered their default the same day.

On October 1, 2010 Lee filed an answer to CCLC's cross-complaint on behalf of Salah and Samax, which CCLC had not named as a cross-defendant.  Lee did not file any responsive pleading on behalf of Jackie.  On October 25, 2010 the trial court took notice of the default previously entered against the Salehs and struck the answer that Lee filed.

Meanwhile, on October 12, 2010 CCLC had filed a motion to compel a judicial reference pursuant to Code of Civil Procedure section 638 to adjudicate the claims in the cross-complaint by Samax and Salah and the cross-complaint by CCLC.  Lee, whom CCLC had served with a copy of the motion, did not file an opposition.  On November 5, 2010 the trial court granted the unopposed motion, finding pursuant to Code of Civil Procedure section 638 that reference agreements existed between the parties to both cross-complaints.  The trial court appointed Judge Patricia Collins as the judicial referee.

On January 21, 2011 the trial court held a default prove up hearing on CCLC's cross-complaint against the Salehs.  Lee did not appear.  The trial court entered default judgment in favor of CCLC and against the Salehs for $134,712.10, consisting of $121,117.67 in damages, $7,333.43 in prejudgment interest, and $6,261.00 in attorneys' fees.

On March 14, 2011 Urban failed to appear for trial.  Lee, who did appear in court that day, moved to dismiss Urban's complaint.  The trial court granted the motion and dismissed the complaint without prejudice.

D.    *The Motion to Set Aside*

1.    The Motion

On February 23, 2012 the Salehs, now represented by new and their current counsel, filed a motion to set aside the defaults and default judgment entered against them and in favor of CCLC, as well as the order compelling judicial reference

4

proceedings. The motion was "based upon the positive misconduct of moving parties' former counsel, Robert Lee, who abandoned moving parties in connection with these proceedings, leading to the entry of both the default judgment and the order granting judicial reference." The Salehs argued that "Attorney Lee abandoned Moving Parties, and unbeknownst to them stipulated to the suspension of his license during his purported representation." The Salehs further argued that the parties had been diligent in trying to set aside the default, default judgment, and the order for judicial reference proceedings.

2. State Bar Proceedings Against Lee

New counsel for the Salehs attached to his declaration in support of the motion copies of documents and orders from *In re Robert Yun Lee*, State Bar Court Case No. 10-C-00210. These documents showed that on December 8, 2009 Lee had pleaded guilty to misdemeanor battery, after which the State Bar had instituted disciplinary proceedings against him. On December 17, 2010 the State Bar Court approved a stipulation between Lee and the State Bar in which Lee, among other things, agreed to an actual suspension of 60 days. On April 21, 2011 the Supreme Court issued an order suspending Lee from the practice of law for two years, stayed execution of the suspension, and placed him on probation for two years on the condition, among others, that the State Bar actually suspend him for 60 days. Lee's suspension was effective on May 21, 2011.[3] At no time did Lee tell Jackie or Salah about his proceedings before the State Bar or that he had entered into a stipulation providing that he would be suspended from the practice of law.

---

[3] On September 8, 2011, in Case No. 10-O-10774, the State Bar Court approved a stipulation between Lee and the State Bar. Lee admitted to the willful misappropriation of client settlement funds and agreed to disbarment. On September 11, 2011 Lee became ineligible to practice law. The Supreme Court issued an order of disbarment on January 10, 2012, and Lee's disbarment became effective on February 9, 2012. We take judicial notice of the records of the State Bar of California posted on its official website concerning Lee. (Evid. Code, § 452, subds. (d), (h); *In re Sodersten* (2007) 146 Cal.App.4th 1163, 1171, fn. 1.)

### 3.     Jackie's Declaration

In her supporting declaration Jackie stated that Salah had retained Lee "to handle the litigation involving him, Samax, CCLC and others."  Although Lee "accepted service of the CCLC cross-complaint on [Jackie's] behalf through a notice of acknowledgement and receipt executed on August 16, 2010," Lee never told Jackie that she had been named in the lawsuit.  In fact, Jackie never spoke to Lee about the case.  Jackie further stated that "[a]t no time did Attorney Lee ever advise me that defaults had been entered against me and my husband on the CCLC cross-complaint, or what the default meant as far as not being able to present a defense to the CCLC cross-complaint."  Jackie added that Lee never advised her that the court had entered a default judgment against her and her husband.

According to Jackie, "[f]rom October 2010 forward" she and her husband "were pretty much in the dark as to what Attorney Lee was doing in this matter, if anything."  Jackie recalled that Salah had sent an email and called Lee to inquire about the case "but received little or no response" from Lee.  Jackie also remembered that Salah received a telephone call from a CCLC representative and then spoke with Lee about the matter.  Based on that conversation, Jackie "assumed" Lee "was still handling the matter for [her] husband and Samax."  (Jackie did not "assume" Lee was "handling the matter" for her because she did not know she was a party.)  After attending a hearing with Lee, Salah told Jackie that "the matter would now proceed before a referee and/or Judge Collins."

In May or June 2011 Salah learned that the court had entered a default judgment against them.  Salah attempted to contact Lee without success.  Jackie stated that at some point Salah reviewed the file and "became aware of a hearing set for August 3, 2011.  Because of my husband's inability to get a hold of Attorney Lee, and because there was a 'judgment' entered against me, my husband and I both attended the hearing."  The Salehs hoped that Lee would be at the hearing, but he was not.  The Salehs explained to the trial court that they had "had no contact with Attorney Lee for quite some time.  The court continued the hearing to December 1, 2011 and advised [them] to get a new attorney."

Heeding the court's advice, the Salehs on August 11, 2011 retained the law firm of Galindo & Fox to attend a single hearing. The Salehs believed that the matter would be resolved at this hearing, although it is unclear from the record on appeal what this hearing was about. The firm updated the Salehs about the case and asked for a retainer of $10,000. The Salehs could not afford the retainer or the firm's hourly rates. On October 16, 2011 the firm substituted out and the Salehs substituted in and represented themselves.

On November 2, 2011 the Salehs retained attorney Janet Canbaz. When the Salehs were unable to pay her fees or the referee's fees, Canbaz moved in January 2012 to be relieved as counsel of record. It was not until January 30, 2012 that the Salehs retained their current counsel "on a contingency basis [and could] now proceed with the case and attempt to repair the damage caused by Attorney Lee's abandonment and omissions to act as well as to address the issues raised by the two cross-complaints."

### 4. Salah's Declaration

Salah stated in his declaration that Lee never told him that Jackie had been named as a cross-defendant in CCLC's cross-complaint, or that he had accepted service on her behalf. Lee also never advised Salah that defaults had been entered against him and Jackie on CCLC's cross-complaint. From October through December 2010, Salah "made inquires to Attorney Lee through numerous emails and/or telephone calls regarding the case, but received no responses from Attorney Lee."

Thereafter, each time Salah attempted to look for another attorney because of Lee's "inattentiveness," Lee would respond. In mid-January 2011, Salah received a call from a CCLC representative stating that the representative had attempted without success to contact Lee to discuss a settlement and inquiring whether Lee still represented Salah. Salah told the representative that he would have to speak with Lee and get back to her. This time, Lee responded and instructed Salah not to speak to the representative and stated he would instruct CCLC not to speak to Salah. Based on this conversation with Lee, Salah "believed Attorney Lee was diligently handling the matter."

7

Salah subsequently noticed on the trial court's website that there was a hearing on January 21, 2011. Salah decided to attend the hearing and believed Lee would appear, but Lee did not. Salah "did not understand the nature of the proceedings or what was being conducted." He attempted to contact Lee "through the end of January [and] through most of February" without any success.

Then Salah tried to find another attorney. In late February or early March, Salah received a call from Lee, who told Salah to be in court on March 14, 2011 for a hearing. Salah appeared, as did Lee, who successfully asked the court to dismiss Urban's complaint. Because of Lee's conduct at the hearing, Salah believed "Lee was handling the proceedings on my and Samax'[s] behalf." Lee advised Salah "that the matter would now proceed before Judge Collins, but never mentioned the defaults or the default judgment."

From late March through April 2011, Salah attempted to contact Lee for an update on the case. Salah received no response. Around May 2011 Salah attempted to make contact with Lee by going to his office. No one was there. In May or June 2011 Salah decided to check the trial court's file and learned for the first time that a judgment had been entered against him and his wife. His attempts to contact Lee and to hire new counsel were unsuccessful.

During his review of the file, Salah noticed that there was a hearing scheduled for August 3, 2011. Because Salah was unable to speak with Lee and because he had learned of the default judgment, Salah and Jackie attended the hearing, hoping that Lee would be present. He was not. The Salehs explained their predicament to the court, which advised them to get a new attorney. Salah's explanation of their efforts to obtain a new attorney was the same as Jackie's explanation.

### 5. The Trial Court's Ruling

On March 16, 2012 the trial court denied the motion by the Salehs to set aside the defaults and default judgment. The court ruled: "Motion of . . . Salehs to set aside default judgment is denied. The moving party fails to establish attorney abandonment or

8

that the moving parties acted with diligence in setting aside the judgment once they became aware of the alleged misconduct and the actual entry of judgment, having delayed from January 2010 [*sic*; 2011] in addressing this matter." Jackie appeals from the trial court's March 16, 2012 order.[4]

## DISCUSSION

A.  *Applicable Law*

A party seeking statutory relief from a default judgment on the ground of extrinsic mistake or fraud pursuant to Code of Civil Procedure section 473, subdivision (b),[5] must file a motion to set aside the default judgment "within a reasonable time, in no case exceeding six months" after entry of judgment. When a party seeks to set aside a default judgment more than six months after entry of the judgment, as in this case, relief under section 473, subdivision (b), is unavailable, but the party seeking relief may ask the trial court to exercise its equitable powers to grant relief. (See *Rappleyea v. Campbell* (1994)

---

[4]     The one final judgment rule precluded Salah from appealing because causes of action between him and CCLC remained to be litigated. (See *Garland v. Central Valley Regional Water Quality Control Bd.* (2012) 210 Cal.App.4th 557, 560, fn. 3.) On April 16, 2012 Jackie filed an amended notice of appeal from the March 16, 2012 order denying her motion to set aside the default judgment and from the order granting CCLC and CHC's motion compelling judicial reference proceedings. On May 16, 2012 this court dismissed the appeal filed April 16, 2012 due to Jackie's default pursuant to California Rules of Court, rule 8.100(c). Accordingly, the propriety of the order compelling judicial reference proceedings is not before us.

[5]     Subdivision (b) of Code of Civil Procedure section 473 provides: "The court may, upon any terms as may be just, relieve a party or his or her legal representative from a judgment, dismissal, order, or other proceeding taken against him or her through his or her mistake, inadvertence, surprise, or excusable neglect. Application for this relief shall be accompanied by a copy of the answer or other pleading proposed to be filed therein, otherwise the application shall not be granted, and shall be made within a reasonable time, in no case exceeding six months, after the judgment, dismissal, order, or proceeding was taken."

9

8 Cal.4th 975, 981 ["a trial court may . . . vacate a default on equitable grounds even if statutory relief is unavailable"]; *Manson, Iver & York v. Black* (2009) 176 Cal.App.4th 36, 42 ["After the time for requesting statutory relief under section 473 has passed, the court may set aside the default and judgment on equitable grounds."].)

"When a default *judgment* has been obtained, equitable relief may be given only in exceptional circumstances. '[W]hen relief under [Code of Civil Procedure] section 473 is available, there is a strong public policy in favor of granting relief and allowing the requesting party his or her day in court. Beyond this period there is a strong public policy in favor of the finality of judgments and only in exceptional circumstances should relief be granted.' [Citations.]" (*Rappleyea v. Campbell*, *supra*, 8 Cal.4th at pp. 981-982.) Thus, "[t]o the extent that the court's equity power to grant relief differs from its power under section 473, the equity power must be considered narrower, not wider." (*Weitz v. Yankosky* (1966) 63 Cal.2d 849, 857; see *Talley v. Valuation Counselors Group, Inc.* (2010) 191 Cal.App.4th 132, 146 ["to the extent that [a party] seeks equitable relief from judgment, such a basis for vacating a dismissal is more restrictive than the statutory grounds of section 473"].)

"We review the court's denial of a motion for equitable relief to vacate a default judgment or order for an abuse of discretion, determining whether that decision exceeded the bounds of reason in light of the circumstances before the court. [Citation.] In doing so, we determine whether the trial court's factual findings are supported by substantial evidence [citation] and independently review its statutory interpretations and legal conclusions [citations]." (*County of San Diego v. Gorham* (2010) 186 Cal.App.4th 1215, 1230; see *Rappleyea v. Campbell*, *supra*, 8 Cal.4th at p. 981; *Sakaguchi v. Sakaguchi* (2009) 173 Cal.App.4th 852, 862.) The party moving for equitable relief bears the burden of proving an entitlement to such relief. (*Sakaguchi*, *supra*, at p. 862.) "When two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court." (*Shamblin v. Brattain* (1988) 44 Cal.3d 474, 478-479.)

10

B.    *Analysis*

"""To set aside a judgment based upon extrinsic mistake one must satisfy three elements.  First, the defaulted party must demonstrate that it has a meritorious case. Second[], the party seeking to set aside the default must articulate a satisfactory excuse for not presenting a defense to the original action.  Last[], the moving party must demonstrate diligence in seeking to set aside the default once . . . discovered." [Citation.]'  [Citation.]"  (*Cruz v. Fagor America, Inc.* (2007) 146 Cal.App.4th 488, 503, italics omitted, quoting *Rappleyea v. Campbell, supra,* 8 Cal.4th at p. 982; see *Lee v. An* (2008) 168 Cal.App.4th 558, 566; *Burnete v. La Casa Dana Apartments* (2007) 148 Cal.App.4th 1262, 1269.)


1.    Meritorious Defense

In its cross-complaint, CCLC sought to enforce the Salehs' personal guaranty, which provided that Jackie and Salah "absolutely, unconditionally and irrevocably" guaranteed Samax's indebtedness.  The guaranty stated that if CCLC "forecloses on any real property collateral pledged by" Samax, "[t]he amount of the debt may be reduced only by the price for which that collateral is sold at the foreclosure sale, even if the collateral is worth more than the sale price."  Among the affirmative defenses in Jackie's proposed answer to CCLC's cross-complaint was the defense that the cross-complaint "is barred by the anti-deficiency statutes, including but not limited to California Code of Civil Procedure [sections] 580a and 580d."

"California's antideficieny statutes," which were "enacted during the Depression, limit or prohibit lenders from obtaining personal judgments against borrowers where the lender's sale of real property security produces proceeds insufficient to cover the amount of the debt." (*Talbot v Hustwit* (2008) 164 Cal.App.4th 148, 151.)  "Courts have recognized a distinction between true, independent contracts of guaranty and guaranties executed by the primary obligor.  [Citation.]  'It is well established that where a principal obligor purports to take on additional liability as a guarantor, nothing is added to the primary obligation.  [Citations.]  The correct inquiry set out by the authority is whether

11

the purported debtor is anything other than an instrumentality used by the individuals who guaranteed the debtor's obligation, and whether such instrumentality actually removed the individuals from their status and obligations as debtors.' [Citations.]" (*Id.* at p. 152; see *Cadle Co. II v. Harvey* (2000) 83 Cal.App.4th 927, 932 ["to collect a deficiency from a guarantor, he must be a true guarantor and not merely the principal debtor under a different name"]; *Torrey Pines Bank v. Hoffman* (1991) 231 Cal.App.3d 308, 319 [collecting cases allowing and disallowing deficiency judgments "where a corporation was the purchaser of property and the corporate officers and shareholders and their families acted as guarantors of the obligation"].) "It is a factual question whether a person is a true guarantor or a principal obligor in guarantor's guise." (*River Bank America v. Diller* (1995) 38 Cal.App.4th 1400, 1422.)

In her declaration in support of the motion to set aside the default judgment, Jackie stated facts sufficient to support her allegations that she was a principal obligor under the debt, not a true guarantor, and thus was entitled to the benefits of California's anti-deficiency law. Jackie and Salah formed Samax for the sole purpose of developing the property, and transferred their interests in the property to the newly-formed LLC. Samax then borrowed the money from CCLC to finance the property. Jackie and Salah signed the construction loan agreement, the promissory note, and construction deed of trust on behalf of Samax. The same day, Jackie and Salah executed personal guarantees. Jackie stated at least one meritorious defense.[6]

### 2. Extrinsic Fraud or Mistake

"The terms 'extrinsic fraud' or 'mistake' 'are given a broad meaning and tend to encompass almost any set of extrinsic circumstances which deprive a party of a fair

---

[6]    In ruling on Jackie's motion to set aside the default judgment, the trial court did not address the issue of whether Jackie had a meritorious defense to CCLC's cross-complaint because the court concluded that the Salehs had not been not diligent in seeking equitable relief. We do not address whether Jackie has any other meritorious defenses.

adversary hearing.  It does not seem to matter if the particular circumstances qualify as fraudulent or mistaken in the strict sense.'  [Citation.]  'Extrinsic mistake involves the excusable neglect of a party.'  [Citation.]  It is a term that broadly applies 'when circumstances extrinsic to the litigation have unfairly cost a party a hearing on the merits.'  [Citation.]"  (*In re Marriage of Thorne & Raccina* (2012) 203 Cal.App.4th 492, 505.)

In order to obtain relief as a result of attorney error the moving party must demonstrate the mistake was excusable because an attorney's inexcusable negligence is imputed to the client and is not a ground for relief.  (*Zamora v. Clayborn Contracting Group, Inc.* (2002) 28 Cal.4th 249, 258; *Carroll v. Abbott Laboratories, Inc.* (1982) 32 Cal.3d 892, 895, 898; *Hopkins & Carley v. Gens* (2011) 200 Cal.App.4th 1401, 1415; *Henderson v. Pacific Gas & Electric Co.* (2010) 187 Cal.App.4th 215, 229; *Seacall Development, Ltd. v. Santa Monica Rent Control Bd.* (1999) 73 Cal.App.4th 201, 204-205.)  "'Excusable neglect is that neglect which might have been the act of a reasonably prudent person under the same circumstances.'  [Citations.]"  (*Huh v. Wang* (2007) 158 Cal.App.4th 1406, 1419.)

There is, however, an exception.  As the court noted in *Seacall Development, Ltd. v. Santa Monica Rent Control Bd.*, *supra*, 73 Cal.App.4th 201, "California courts recognize an exception to [the general rule that the negligence of an attorney is imputed to the client] in those cases '"where the attorney's neglect is of that extreme degree amounting to positive misconduct, and the person seeking relief is relatively free from negligence."'  [Citation.]  This exception is premised on the concept such extreme misconduct '"obliterates the existence of the attorney-client relationship"' [citation] and for this reason the client has no attorney from whom negligence can be imputed."  (*Id.* at p. 205; accord, *Stafford v. Mach* (1998) 64 Cal.App.4th 1174, 1188, fn. 11.)  Thus,

"[i]mputation of the attorney's neglect to the client ceases at the point where 'abandonment of the client appears.'" (*Seacall Development, Ltd.*, *supra*, at p. 205.)[7]

This exception applies here. After accepting service of CCLC's cross-complaint against Jackie, Lee proceeded to provide her no legal representation whatsoever. Lee did not file an answer, make a motion, make an appearance in court, or serve a single interrogatory on her behalf. Lee did not even tell Jackie that CCLC had filed a cross-complaint against her, or that he had accepted service for her. Instead, without lifting a litigation finger Lee allowed CCLC to obtain her default. When Lee attempted to file an answer after the court had entered Jackie's default, Lee filed an answer for Salah, not Jackie, and Samax, an entity that was not even a named cross-defendant. Lee never told Jackie the trial court had entered a default judgment against her, and he made no effort to set aside the default judgment under Code of Civil Procedure section 473, subdivision (b). Indeed, for two months of the six-month statutory period Lee had for making a statutory motion, Lee was suspended from the practice of law and was not allowed by law to file such a motion or provide any legal representation to Jackie (which he also did not tell her).

Lee's omissions were more than simple legal malpractice; they amounted to abandonment. Lee did not simply make legal mistakes, nor did he commit mere errors in judgment. He did nothing at all, other than watch silently and motionlessly as matters went from bad to worse to default judgment for Jackie. Lee's total and complete failure to provide Jackie with any legal representation constituted positive misconduct, which is not imputed to Jackie. (See *Carroll v. Abbott Laboratories, Inc.*, *supra*, 32 Cal.3d at p. 900 ["unconscionable to apply the general rule charging the client with the attorney's neglect" where there has been a "total failure on the part of counsel to represent the client"]; *Aldrich v. San Fernando Valley Lumber Co.* (1985) 170 Cal.App.3d 725, 739

---

**7**     The phrase "positive misconduct" is something of a misnomer because it usually refers not to acting improperly but to not acting at all. (*Fleming v. Gallegos* (1994) 23 Cal.App.4th 68, 72.)

["Positive misconduct is found where there is a total failure on the part of counsel to represent his client."].)**8**

### 3. Diligence

"One moving in equity to set aside a default judgment must act diligently in making his motion after he learns of the default judgment." (*Weitz v. Yankosky*, *supra*, 63 Cal.2d at p. 857.) The chronology establishes that, although Jackie may not have been the most aggressively diligent defaulted defendant, she was diligent enough.

Jackie learned for the first time in May or June 2011 that she had been named as a cross-defendant and that a judgment had been entered against her and her husband. Unbeknownst to her, Lee was suspended from the practice of law from May 21, 2011 to July 21, 2011. Thus, even if Jackie had known to ask her attorney to file a motion for relief from the default judgment during this time period, her attorney could not legally have done so, nor even given her any legal advice on how to do so. (See Bus. & Prof. Code, § 6126, subd. (b) ["Any person who has been . . . suspended from membership from the State Bar . . . and thereafter practices or attempts to practice law . . . is guilty of a crime punishable by imprisonment . . . ."].)

Because Salah's attempts to contact Lee were fruitless, and in an effort to find out the status of the case, Jackie accompanied Salah to a court hearing on August 3, 2011. At that hearing, at which Lee did not appear, the Salehs advised the court that they had not had any contact with Lee for some time. The court advised them to seek new counsel. The Salehs retained the Galindo firm a little over a week later, on August 11, 2011. The

---

**8** CCLC argues that Lee's conduct did not amount to positive misconduct because Lee appeared in court on March 14, 2011 and successfully asked the trial court to dismiss Urban's complaint. Lee made this request on behalf of Salah and Samax, not Jackie. Jackie was not a named defendant in Urban's complaint. Thus, on March 14 Lee did not accomplish anything that benefited Jackie. To the extent Lee obtained the dismissal of potentially responsible parties other than Jackie, his actions on March 14 could only have worked to her detriment.

Galindo firm advised Jackie of the impact of Lee's failure to take any actions in his representation of her, but she could not afford the firm's retainer or hourly rate. Meanwhile, on September 8, 2011, Lee, the attorney who could have assisted Jackie's new counsel and provided a declaration in support of any motion to set aside, entered into a stipulated order of disbarment, effective September 11, 2011.

The Galindo firm withdrew on approximately October 12, 2011, and Jackie was representing herself. Approximately three weeks later, on November 2, 2011, Jackie retained Canbaz. Canbaz represented Jackie until Canbaz filed a motion to be relieved as counsel in January 2012. On January 30, 2012 Jackie retained her current counsel, who filed the motion to vacate within a few weeks. Although eight or nine months elapsed between the time that Jackie first learned of the default judgment and the time her current counsel filed the motion seeking equitable relief, Jackie acted reasonably, diligently, and persistently to find counsel who could seek the relief she needed. (See *Rappleyea v. Campbell*, *supra*, 8 Cal.4th at p. 984 [defendants acted diligently even though they did not move for relief for more than a year]; *Manson, Iver & York v. Black*, *supra*, 176 Cal.App.4th at p. 49 [defendant who learned of default and default judgment in 2005, then received inaccurate legal advice leading her to believe she had no remedy, and then in 2008 conducted her own legal research and found she did have a remedy, acted diligently in then filing a motion and was entitled to equitable relief]; cf. *Lee v. An*, *supra*, 168 Cal.App.4th at p. 566 [diligence required for equitable relief not established where defendant waited more than two years after learning of default judgment to file a motion to vacate].) There was no significant period of time where Jackie was not diligently seeking, with and without the assistance of counsel, to set aside the default judgment. Substantial evidence does not support the trial court's determination that Jackie did not act diligently. (*County of San Diego v. Gorham*, *supra*, 186 Cal.App.4th at p. 123.)

### C.     *Conclusion*

Lee's inaction deprived Jackie of the opportunity to present her potentially meritorious defense. Jackie was kept ignorant of, and prevented from fully participating

in, the proceedings that led to the default judgment against her.  (See *Department of Industrial Relations v. Davis Moreno Construction, Inc.* (2011) 193 Cal.App.4th 560, 570; *Sporn v. Home Depot USA, Inc.* (2005) 126 Cal.App.4th 1294, 1300.)  She was reasonably diligent in seeking counsel and making efforts to challenge the default judgment that the court entered against her because of Lee's abandonment.  The trial court abused its discretion in denying her motion to vacate.  (*Rappleyea v. Campbell*, *supra*, 8 Cal.4th at p. 981; *County of San Diego v. Gorham*, *supra*, 186 Cal.App.4th at p. 1230.)

## DISPOSITION

The order is reversed and the trial court is directed to enter a new order granting Jackie Saleh's motion to vacate the entry of default and default judgment and to permit her to file an answer to CCLC's cross-complaint.  Jackie Saleh is to recover her costs on appeal.

SEGAL, J.[*]

We concur:

PERLUSS, P. J.

ZELON, J.

---

[*]   Judge of the Los Angeles Superior Court assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

17