Filed 9/30/25  Padliya v. Rajvaidya CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| TEJAS SURYAPRAKASH PADLIYA, <br><br>     Plaintiff and Appellant, <br><br> v. <br><br> POONAM RAJVAIDYA, <br><br>     Defendant and Respondent. | A170161 <br><br> (San Francisco City & County Super. Ct. No. FDI-23-798522) |

Separated spouses Tejas Padliya (Tejas) and Poonam Rajvaidya (Poonam)[1] filed requests for domestic violence restraining orders against each other.  Poonam's request also sought reconnection with their infant daughter.  Both sides were represented by counsel in their filings and throughout the proceedings below, which proceedings took place over five separate days when the trial court heard testimony from both parties and several other witnesses.  Following closing argument, the court ruled in favor of Poonam and against Tejas, granting her request for a restraining order and denying his.  The court also ordered that further proceedings be held in connection with Poonam's relationship with their daughter.

---

[1]     For consistency with the testimony below, we refer to the parties by their first names.

Tejas appealed and, now representing himself, has filed a 12-page brief purporting to raise nine issues. What few facts that are in the brief are set forth in Tejas's favor; the brief cites only two cases, neither of which has any pertinence; and the brief violates numerous principles of appellate review and Rules of Court. Most significantly, the brief does not even attempt to demonstrate, let alone demonstrate, that the trial court erred. We thus affirm.

## BACKGROUND

### The General Setting

Poonam met Tejas in February 2021 on what she called a "matrimony app," Shaadi.com, which Poonam had joined along with her parents. She was living in Austin, Texas, he in San Francisco, and her parents in India. Following brief personal interaction—Poonam said they met once in person, Tejas that they met three times—they decided to marry in what Poonam described as an "arranged marriage for me."

They had a ceremony in Austin, and later a ceremony in India attended by some 1500 people. Poonam remained in India for some time, and returned to San Francisco with Tejas in January 2022.

As the trial court would later put it, the "environment in which [the parties] found themselves was a very hostile and controlling environment, very coercive," apparently from inception. And the problems accelerated in March 2022, when Poonam's father was diagnosed with lung cancer, and she went to India. She and Tejas communicated regularly while she was there, communications Poonam described as "scary" and "really shocking."

Poonam's father died in May, and she returned to San Francisco in June. Issues continued between them, and in October she went back to

India, to return to San Francisco on October 31, pregnant. Their daughter was born in June 2023.

Because of Tejas's treatment—more accurately, mistreatment—of the record and the nature of his arguments, we need not set forth at length the parties' testimony concerning their relationship. Suffice to say that Poonam testified to physical abuse (including that Tejas kicked her) and emotional abuse, leading to the trial court's description quoted above. She also testified to the effect the relationship had on her, including her participation in groups for survivors of domestic violence.

Because of it being alluded to in one of Tejas's arguments, we do mention a particular incident on July 31, 2023, in the presence of Tejas's mother, which began with a verbal dispute and erupted into a physical altercation. Poonam called 911, and the police arrived. Among other things they saw a scratch on Tejas's nose and arrested Poonam. She was jailed, and from that day through the proceedings below essentially lost contact with her daughter.

**The Proceedings Below**

On August 3, 2023, represented by counsel, Tejas filed a request for a domestic violence restraining order, following which he obtained a temporary restraining order.

On August 30, Poonam filed her own request for a domestic violence restraining order.

Both sides filed responses. Both sides filed trial briefs, and the matter came on for hearing on October 19, to be further heard on four additional days: November 21 and December 12, 22, and 27. Both parties testified at length over more than one session, testimony that included their versions of the relationship and some evidence regarding custody of their daughter. The

3

court also heard testimony from Tejas's sister, Poonam's brother and mother, and from the officer who responded to the 911 call. Many exhibits were also admitted.

Following closing argument by counsel on December 27, the court announced its decision. It proceeds for some six pages, and includes the following:

"The Court finds that the environment in which the Petitioner [Tejas] and the Respondent [Poonam] found themselves was a very hostile and controlling environment, very coercive. The Petitioner was very much dominant into what took place in that home, particularly when other people were there present; he made people uncomfortable.

"When the Respondent's mother was there, she observed his dominance precluding her from having her own opinions and expressing her opinions. She testified to things she observed happening, pushing her. And I have no reason to discredit the mother's testimony.

"There was— both two people testified about throwing the clothes outside of the apartment because for whatever reason, but testimony of threatening suicide and frightening her that way.

"The Court took into consideration very strongly and very seriously the videotape which the Court concludes was the Respondent making those statements . . . . It's clearly the reflection of somebody who was scared, upset, concerned about everything going forward.

"The Court finds that Mr. Padliya was coercive. The events that took place on July 31 certainly seemed the way they were presented seemed credible, and I can understand her saying that the mother and my husband are beating me. The mother had refused to let her leave. Refused to let her leave the home, and was there at the time the events took place.

4

"And the testimony that she was hit on the head are, I think the hair was grabbed was convincing to the Court that this happened. Mother did go in the bedroom. She did that with her phone, and then the other two went downstairs."

Following a few other observations, the court turned to the issue of custody:

"And I find that the issue of the custody that attempting to go give custody to the mother was very disconcerting because it just hasn't happened in more than two months. And the videos reflect there was to be exchange at the police station; that Respondent was inside the police station waiting for the exchange, and then the events happened with the car outside. And—and I think the inference of the controlling nature was of this automobile that had been leased by the mother and then paid for was in the name of the Petitioner, the license, which is another inference of the controlling nature of this relationship.

"So the Court is going to find that is going to issue a restraining order against the Petitioner, and not against the Respondent.

"And the Court under the circumstances given all that has been seen does not think that 50/50 is appropriate at this time based upon the 3044 presumption against joint and joint legal and joint physical custody, and so, that issue is going to have to be addressed, and we're going to have to set a hearing for that issue to be addressed. [¶] . . . [¶]

"And—and I heard the testimony from Ms. Rajvaidya Padliya, and she obviously wants to be with her child, and she's done steps to make that happen without it escalate into further potential domestic violence and circumstances . . . .

5

"Now, we need to talk about visitation on reverse at this juncture. Ms. Rajvaidya, has to be provided with the children's—the child's possessions so that she can assume custody at this juncture and assume her obligations as a mother of this child, and we need to figure out a schedule.

"We need substantial time, but it cannot be de facto until father can demonstrate, and I'll leave this to counsel to discuss with him the issues for rebutting the presumption to get to 50/50 like counsel generously offered, but I don't think as the Court at this juncture order that."

The court minutes for December 27 reflect the following:

"The parties concluded their testimony.

"Both parties are requesting 3 year restraining orders. Respondent also requests 50/50 custody.

"Based on pleadings, evidence, and testimony provided the Court makes the following findings and orders:

"1. The Court finds the environment is very hostile and coercive and Petitioner dominated as to what took place at the home.

"2. The Court finds Petitioner was coercive.

"3. The Court finds the issue of custody very discerning as Respondent's visits have not happened in two months.

"4. Petitioner's request for restraining order is denied.

"5. Respondent's request for restraining order is granted for a period of 3 years.

"6. The Court does not see 50/50 custody appropriate at this time based on the 3044 presumption.

"7. The Court does not find Petitioner has a true fear of Respondent.

"8. Respondent is granted temporary legal and sole custody of the minor.

6

"9.  Petitioner shall not abuse Respondent.

"10.  Petitioner shall not contact Respondent except for custody related issue using Talkingparents or Our Family Wizard.

"11.  Petitioner is to stay 100 yards away from Petitioner's person and home.

"12.  The order current order [*sic*] regarding the car remains in effect (control of 2020 Toyota Corolla LE to Respondent).

"13.  Mr. Gonzales and Respondent to pick up the minor from Petitioner's house located at . . . at 3 pm today.

"a.  Petitioner's [*sic*] to provide essential belongs [*sic*] of the minor to Respondent.

"14. Counsel to meet and confer regarding visitation for Petitioner. Parties to contact Family Court Service is [*sic*] unable to establish visitation. Visits will be unsupervised.

"15. A review hearing is set for February 21, 2023, [*sic*] at 8:30 a.m. in Department 403 regarding visitation and for the parties to attend orientation and mediation.

"16.  FDV-23-817022 is consolidated with related case FDI-23-798522 with FDI-23-798522 being the lead case.  [¶]

"Tara Berta of CROC prepared the restraining order after hearing. Certified copies provided to the parties."

The court then entered a restraining order against Tejas on Judicial Council Form DV-130, as well as the custody and visitation order on Judicial Council Form DV-140.

Represented by new counsel, Tejas moved for reconsideration and a new trial.  Poonam filed opposition, Tejas a reply, following which the trial court denied both motions.

7

On April 10, Tejas filed his notice of appeal, filed by the same counsel who filed the post-trial motions, which counsel also prepared the record on appeal.

## DISCUSSION

Despite that the record on appeal was filed by counsel, Tejas has chosen to represent himself on appeal, which, of course, is his right. Doing so, however, he is held to the same standard as an attorney. (*Rappleyea v. Campbell* (1994) 8 Cal.4th 975, 984–985.) Self-representation is not a ground for lenient treatment and a person who represents himself "must follow correct rules of procedure." (*Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1247.)

The first four-plus pages of Tejas's brief are the table of authorities, the statement of the case, and the statement of appealability. This is followed by some two pages of "Statement of Facts," which are set forth in conclusory fashion and in accord with Tejas's version of the evidence. The brief then sets forth nine arguments, contained in some four pages, which arguments are as follows:

"I.     No Coercion from Me";

"II.    No Violence from Me";

"III.   Visitation was not Blocked by Me";

"IV.   Refusal by Respondent to Contribute Towards Expenses";

"V.    Inconsistencies in Respondent's Statements";

"VI.   The Trial Court Erred in Granting Respondent's DVRO and Denying my DVRO";

"VII.  The Trial Court Erred in Awarding Sole Custody to Respondent";

"VIII. The Trial Court Failed to Properly Weigh Evidence and Consider Inconsistencies in Respondent's Allegations"; and

"IX. The Court's Decision Violates My Due Process Rights."

Seven of the nine arguments (all but III and VIII) are one paragraph; the other two are two paragraphs. Six of the nine arguments (all but V, VIII, and IX) contain no case or other authority cited in claimed support. And as even a cursory reading of the arguments reveal, most of them are in one way or another a mere restatement—and in the most conclusory fashion—of Tejas's apparent position below. This disregards the admonition from Division One of this court that an appellant (such as Tejas here) is not to merely reargue or "merely reassert [his] position" below. (*Conderback, Inc. v. Standard Oil Co.* (1966) 239 Cal.App.2d 664, 687.) Even more significantly, Tejas's brief ignores the most fundamental rule of appellate review, that the rulings of the trial court are presumed correct, and that he, as appellant, must demonstrate the court committed reversible error. (*Jameson v. Desta* (2018) 5 Cal.5th 594, 608–609; *In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133.)

But beyond that, Tejas's brief ignores numerous principles of appellate review, not to mention California Rules of Court. Specifically:

California Rules of Court, rule 8.204(a)(2)(C) provides that an appellant's opening brief shall "[p]rovide a summary of the significant facts . . . ." And the leading California appellate practice guide instructs about this: "Before addressing the legal issues, your brief should accurately and fairly state the critical facts (including the evidence), free of bias; and likewise as to the applicable law. [Citation.] [¶] Misstatements, misrepresentations, and/or material omissions of the relevant facts or law can instantly 'undo' an otherwise effective brief, waiving issues and arguments; it will certainly cast doubt on your credibility, may draw sanctions [citation], and may well cause you to lose the case." (Eisenberg et

9

al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 2024) ¶ 9:27, italics omitted.) Such summary is missing here.

California Rules of Court, rule 8.204(a)(1)(C) requires that any reference to a matter in the record, whether factual or procedural, be supported by a citation to the volume and page number of the record where the matter appears. (*Professional Collection Consultants v. Lauron* (2017) 8 Cal.App.5th 958, 970; *Myers v. Trendwest Resorts, Inc.* (2009) 178 Cal.App.4th 735, 745.) Tejas's brief has few record references.

California Rules of Court, rule 8.204(a)(1)(B) states that each point in a brief must be supported by argument and, if possible, citation of authority. As indicated, most of Tejas's arguments cite nothing in claimed support, itself a basis to reject the arguments. (*United Grand Corp. v. Malibu Hillbillies, LLC* (2019) 36 Cal.App.5th 142, 153; *Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 784—785 [" 'When an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority, we treat the point as waived' "].)

Tejas's brief has no statement as to the "standard of review." Cases hold that such omission is by itself sufficient to show that the appeal has no merit. (See *Sonic Manufacturing Technologies, Inc. v. AAE Systems, Inc.* (2011) 196 Cal.App.4th 456, 465 ["Failure to acknowledge the proper scope of review is a concession of a lack of merit"], citing *James B. v. Superior Court* (1995) 35 Cal.App.4th 1014, 1021.)

In sum and in short, Tejas's appeal can be rejected without further discussion on the bases noted above. And we so reject it.

We do close with brief observations about a few of Tejas's arguments.

Argument V talks in terms of inconsistencies in Poonam's testimony; and argument VIII states the court did not properly weigh the evidence and

erred in finding Poonam credible. Such credibility determinations cannot be weighed on appeal: " ' "We have no power on appeal to judge the credibility of witnesses or to reweigh the evidence." ' " (*Fabian v. Renovate America, Inc.* (2019) 42 Cal.App.5th 1062, 1067.) " 'The appellate court cannot substitute its factual determinations for those of the trial court; it must view all factual matters most favorably to the prevailing party and in support of the judgment.' " (*Ibid*.)

Argument VI apparently asserts that the trial court ignored evidence that Poonam was arrested for domestic violence and that an emergency protective order was issued. The fact is that Tejas's counsel asked him about the protective order, and he testified about it. Poonam's counsel made no objections and the trial court did nothing to interfere with that line of questioning. Similarly, Tejas testified that Poonam was arrested.

Argument VII refers, however obliquely, to the court's custody ruling. Family Code section 3044 states, in relevant part: "Upon a finding by the court that a party seeking custody of a child has perpetrated domestic violence within the previous five years against the other party seeking custody of the child . . . , there is a rebuttable presumption that an award of sole or joint physical or legal custody of a child to a person who has perpetrated domestic violence is detrimental to the best interest of the child . . . ." (Fam. Code, § 3044, subd. (a).) Apparently, Tejas's argument is that Poonam requested joint custody. Even if true, the court below was tasked to issue an order that was in the best interest of the child, and Family Code section 3044 clearly indicates that there is a presumption that joint custody would not be in the best interest of the child here.

Argument IX asserts that the trial court's decision violates Tejas's due process rights. Tejas argues that the court failed to consider the emergency

11

protective order and arrest, while simultaneously citing to the portion of the record where those are discussed. He then discusses a recording that was admitted at trial and addressed in the court's findings. Despite this, Tejas claims—a claim made without reference to any evidence he tried to present that was denied—that the court had a "one-sided approach," and that this "deprived [him] of a meaningful opportunity to present [his] case." We read the record otherwise.

## DISPOSITION

The orders are affirmed. Poonam Rajvaidya shall recover her costs on appeal.

_____

RICHMAN, ACTING P. J.

We concur.

_____

MILLER, J.

_____

DESAUTELS, J.

(A170161N)

13